IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

---

NEW YORK MARINE AND GENERAL
INSURANCE COMPANY,

        Plaintiff,

v.

NOTRE DAME FEDERAL CREDIT UNION
and DAVID DILLEY,

        Defendants.

Case No.: _____

**PLAINTIFF NEW YORK
MARINE AND GENERAL
INSURANCE COMPANY'S
COMPLAINT FOR
DECLARATORY JUDGMENT**

---

Plaintiff New York Marine and General Insurance Company ("New York Marine"), by and through its undersigned counsel, for its Complaint against Defendant Notre Dame Federal Credit Union (the "Credit Union") and Defendant David Dilley ("Dilley") for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2202, regarding certain policies of insurance issued by New York Marine to the Credit Union, states as follows:

## I.      PARTIES

1.      New York Marine is a corporation domiciled under the laws of the State of New York, with its principal place of business in Morristown, New Jersey. New York Marine is duly qualified and authorized to transact its business within the State of Indiana.

2.      The Credit Union is a federally chartered financial cooperative with its principal place of business in Indiana. The Credit Union localizes its activities in Indiana because its principal place of business is in Indiana, eight of its ten branches are in Indiana, and its business activities are centered in Indiana. The Credit Union is thus a citizen of Indiana.

3.      Dilley is domiciled in Indiana and is thus a citizen of Indiana.

1

## II.    JURISDICTION AND VENUE

4.    This Court has the power to determine the parties' respective rights and other legal obligations as requested herein pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The dispute between New York Marine, the Credit Union, and Dilley, discussed below, creates an actual controversy for this Court to adjudicate.

5.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

6.    Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(1), because the Credit Union is located in this judicial district.

## III.    FACTUAL ALLEGATIONS

### A.    Summary of the Underlying Litigation

7.    This declaratory-judgment action concerns whether, under three insurance policies issued by New York Marine to the Credit Union, New York Marine has any duty to defend or indemnify the Credit Union with respect to a counterclaim asserted against the Credit Union ("Dilley's Counterclaim") in a lawsuit commenced by the Credit Union.

### B.    New York Marine's Commercial Package Policy 2017–20

8.    New York Marine issued a Commercial Package Policy No. PK201700010378 (the "2017–20 Policy") to the Credit Union.

9.    A true and correct copy of the 2017–20 Policy is attached as Exhibit A.

10.    The Commercial General Liability Coverage Form, Coverage B, of the 2017–20 Policy states:

1. **Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(CG 00 01 04 13, page 6 of 16.)

11.     The Commercial General Liability Coverage Form in the 2017–20 Policy defines

"personal and advertising injury" as follows:

> injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> . . .
>
> **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy; . . . .

(CG 00 01 04 13, page 15 of 16.)

    12.    A condition of the Commercial General Liability Coverage Form in the 2017–20

Policy states:

### 2. Duties In the Event of Occurrence, Offense, Claim Or Suit

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If the claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(CG 00 01 04 13, page 11 of 16.)

13.    The Commercial General Liability Coverage Form of the 2017–20 Policy defines "suit" to mean: "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (CG 00 01 04 13, page 16 of 16.)

14.    An endorsement to the 2017–20 Policy replaces Exclusion 2 of the Commercial General Liability Coverage Form, Coverage B, with the following:

This insurance does not apply to:

**Access or Disclosure Of Confidential Or Personal Information And Data-related Liability**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including . . . financial information . . . .

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expenses incurred by you or other arising out of any access to or disclosure of any person's or organization's confidential or personal information.

(CG 21 06 05 14, page 1 of 1.)

15.    The "policy period" of the Commercial General Liability Coverage Form for the 2017–20 Policy is from April 17, 2017, to April 17, 2020. (CG DS 01 10 01, page 1 of 8.)

16. New York Marine is the named insurer under the Commercial General Liability Coverage Form in the 2017–20 Policy. (CG 00 01 04 13, page 1 of 16; see also CG DS 01 10 01, page 1 of 8.)

17. The Credit Union is the named insured under the Commercial General Liability Coverage Form in the 2017–20 Policy. (CG 00 01 04 13, page 1 of 16; see also CG DS 01 10 01, page 1 of 8.)

18. Additional terms, conditions, definitions, and exclusions are set forth in the 2017–20 Policy.

**C.  New York Marine's Commercial Package Policy 2020–2023**

19. New York Marine issued a Commercial Package Policy No. PK202000010378 (the "2020–23 Policy") to the Credit Union.

20. A true and correct copy of the 2020–23 Policy is attached as Exhibit B.

21. The Commercial General Liability Coverage Form, Coverage B, of the 2020–23 Policy states:

> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:
>
> **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
>
> **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of

> judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**
>
> **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(CG 00 01 04 13, page 6 of 16.)

22.     The Commercial General Liability Coverage Form in the 2020–23 Policy defines

"personal and advertising injury" as follows:

> injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> . . .
>
> **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy; . . . .

(CG 00 01 04 13, page 15 of 16.)

23.     A condition of the Commercial General Liability Coverage Form in the 2020–23

Policy states:

> **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>
> **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
> **(1)** How, when and where the "occurrence" or offense took place;

7

    **(2)** The names and addresses of any injured persons and witnesses; and

    **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(CG 00 01 04 13, page 11 of 16; *see also* GL 0225 1013, page 4 of 6.)

      24.    The Commercial General Liability Coverage Form of the 2020–23 Policy defines "suit" to mean: "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (CG 00 01 04 13, page 16 of 16.)

8

25.     An endorsement to the 2020–23 Policy replaces Exclusion 2 of the Commercial General Liability Coverage Form, Coverage B, with the following:

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including . . . financial information . . . .

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

(CG 21 06 05 14, page 1 of 1.)

26.     The "policy period" of the Commercial General Liability Coverage Form for the 2020–23 Policy is from April 17, 2020, to April 17, 2023. (CG DS 01 10 01, page 1 of 5.)

27.     New York Marine is the named insurer under the Commercial General Liability Coverage Form in the 2020–23 Policy. (CG 00 01 04 13, page 1 of 16; see also CG DS 01 10 01, page 1 of 5.)

28.     The Credit Union is the named insured under the Commercial General Liability Coverage Form in the 2020–23 Policy. (CG 00 01 04 13, page 1 of 16; see also CG DS 01 10 01, page 1 of 5.)

29.     Additional terms, conditions, definitions, and exclusions are set forth in the 2020–23 Policy.

30.     New York Marine issued Policy Change No. 1, effective April 27, 2020, to the 2020–23 Policy.

9

31.    A true and correct copy of Policy Change No. 1 to the 2020–23 Policy is attached as Exhibit C.

32.    New York Marine issued Policy Change No. 2, effective August 5, 2020, to the 2020–23 Policy.

33.    A true and correct copy of Policy Change No. 2 to the 2020–23 Policy is attached as Exhibit D.

34.    New York Marine issued Policy Change No. 3, effective June 16, 2021, to the 2020–23 Policy.

35.    A true and correct copy of Policy Change No. 3 to the 2020–23 Policy is attached as Exhibit E.

36.    New York Marine issued Policy Change No. 4, effective November 16, 2021, to the 2020–23 Policy.

37.    A true and correct copy of Policy Change No. 4 to the 2020–23 Policy is attached as Exhibit F.

38.    New York Marine issued Policy Change No. 5, effective November 16, 2021, to the 2020–23 Policy.

39.    A true and correct copy of Policy Change No. 5 to the 2020–23 Policy is attached as Exhibit G.

40.    New York Marine issued Policy Change No. 6, effective June 6, 2022, to the 2020–23 Policy.

41.    A true and correct copy of Policy Change No. 6 to the 2020–23 Policy is attached as Exhibit H.

42.    New York Marine issued Policy Change No. 7, effective January 19, 2023, to the 2020–23 Policy.

43.    A true and correct copy of Policy Change No. 7 to the 2020–23 Policy is attached as Exhibit I.

44.    New York Marine issued Policy Change No. 8, effective February 8, 2023, to the 2020–23 Policy.

45.    A true and correct copy of Policy Change No. 8 to the 2020–23 Policy is attached as Exhibit J.

**D.    New York Marine's Commercial Package Policy 2023–2026**

46.    New York Marine issued a Commercial Package Policy No. PK202300010378 (the "2023–26 Policy") to the Credit Union.

47.    A true and correct copy of the 2023–26 Policy is attached as Exhibit K.

48.    The Commercial General Liability Coverage Form, Coverage B, of the 2023–26 Policy states:

> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:
>
> **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
>
> **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of

judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(CG 00 01 04 13, page 6 of 16.)

49. The Commercial General Liability Coverage Form in the 2023–26 Policy defines "personal and advertising injury" as follows:

injury, including consequential "bodily injury", arising out of one or more of the following offenses:

. . .

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy; . . . .

(CG 00 01 04 13, page 15 of 16.)

50. A condition of the Commercial General Liability Coverage Form in the 2023–26 Policy states:

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(CG 00 01 04 13, page 11 of 16; *see also* GL 0225 1013, page 4 of 6.)

     51.    The Commercial General Liability Coverage Form of the 2023–26 Policy defines "suit" to mean: "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (CG 00 01 04 13, page 16 of 16.)

52. An endorsement to the 2023–26 Policy replaces Exclusion 2 of the Commercial General Liability Coverage Form, Coverage B, with the following:

> This insurance does not apply to:
>
> **Access Or Disclosure Of Confidential Or Personal Information**
>
> "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including . . . financial information . . . .
>
> This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

(CG 21 06 05 14, page 1 of 1.)

53. An endorsement to the 2023–26 Policy adds an exclusion to the Commercial General Liability Coverage Form stating:

> This insurance does not apply to . . . "personal and advertising injury" resulting from the rendering of or the failure to render financial services by any insured to others. For the purpose of this exclusion, financial services include but are not limited to:
>
> . . .
>
> **3.** Lending, or arranging for the lending of, money, including credit card, debit card, leasing or mortgage operations or activities or interbank transfers;
>
> **4.** Repossessing of real or personal property from a borrower or acting as an assignee for the benefit of creditors;
>
> **5.** Checking or reporting of credit;
>
> **6.** Maintaining of financial accounts or records; . . . .
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property

14

damage", or the offense which caused the "personal and advertising injury," involved the rendering of or the failure to render financial services by any insured to others.

(CG 21 52 04 13, page 1 of 1.)

54.    The "policy period" of the Commercial General Liability Coverage Form for the 2023–26 Policy is from April 17, 2023, to April 17, 2026. (CG DS 01 10 01, page 1 of 5.)

55.    New York Marine is the named insurer under the Commercial General Liability Coverage Form in the 2023–26 Policy. (CG 00 01 04 13, page 1 of 16; see also CG DS 01 10 01, page 1 of 5.)

56.    The Credit Union is the named insured under the Commercial General Liability Coverage Form in the 2023–26 Policy. (CG 00 01 04 13, page 1 of 16; see also CG DS 01 10 01, page 1 of 5.)

57.    Additional terms, conditions, definitions, and exclusions are set forth in the 2023–26 Policy.

58.    New York Marine issued Policy Change No. 1, effective August 29, 2023, to the 2023–26 Policy.

59.    A true and correct copy of Policy Change No. 1 to the 2023–26 Policy is attached as Exhibit L.

**E.      Credit Union Commences Lawsuit Against Dilley**

60.      On September 10, 2021, the Credit Union commenced an action against Dilley for defaulting on a contract, in Indiana State Superior Court, Kosciusko County, Case No. 43D04-2109-CC-000568 (the "Lawsuit").

61.      In the Credit Union's Complaint, the Credit Union sought, among other forms of relief, a judgment in the amount of $7,992.49, plus contractual interest from the last date of payment, reasonable attorney fees, and cost of the proceedings.

**F.      Dilley Asserts Counterclaim against Credit Union for Alleged UCC Violations**

62.      On October 22, 2021, Dilley filed an Answer and Counterclaim in the Lawsuit.

63.      A true and correct copy of the Answer and Counterclaim is attached as Exhibit M.

64.      In Count I of the Answer and Counterclaim, Dilley asserted UCC violations under IC §§ 26-1-9.1-601 through 26-1-9.1-628, regarding a consumer note related to a 2015 Jeep Grand Cherokee.

65.      In Count II of the Answer and Counterclaim, Dilley asserted UCC violations under IC §§ 26-1-9.1-601 through 26-1-9.1-628, regarding a consumer note related a 2016 KZ Recreational Vehicle.

66.      In Count III of the Answer and Counterclaim, Dilley asserted UCC violations under IC §§ 26-1-9.1-601 through 26-1-9.1-628, regarding a consumer note related to a 2012 Polaris ATV.

67.      In the Answer and Counterclaim, Dilley sought statutory relief under the UCC, interest, declaratory relief, injunctive relief, and attorney fees.

68.      On or before October 22, 2021, the Credit Union did not report Dilley's Counterclaim to New York Marine.

### G.    The Credit Union Answered Dilley's Counterclaim

69.    On November 11, 2021, the Credit Union answered, through counsel, Dilley's Counterclaim denying the allegations.

70.    The Credit Union's counsel that filed the Answer to the Counterclaim was Krisor & Associates.

71.    The Credit Union did not report Dilley's Counterclaim to New York Marine and did not seek New York Marine's approval for Krisor & Associates to represent the Credit Union with respect to Dilley's Counterclaim.

### H.    Dilley Amended the Counterclaim to Assert a Class Action against the Credit Union

72.    On February 14, 2022, Dilley filed a Motion for Leave to Amend Original Answer and Counterclaim.

73.    In the Motion for Leave to Amend, Dilley asserted that he was seeking leave to amend to add class-action allegations based on the Credit Union's alleged standard practice of using pre-sale notices and post-sale notices that violate IC § 26-1-9.1-601 *et seq.*

74.    On or before February 14, 2022, the Credit Union did not report to New York Marine that Dilley was seeking to add class-action allegations to Dilley's Counterclaim or that a counterclaim had been filed against the Credit Union.

75.    On March 17, 2022, the Credit Union, through counsel, filed a Motion for Enlargement of Time to Respond to Motion for Leave to Amend Original Answer and Counterclaim.

76.    In the motion for enlargement of time, the Credit Union stated that it had just retained attorneys from Kreig DeVault, LLP, who needed time to familiarize themselves with the case.

17

77.    The Credit Union did not seek approval from New York Marine for Kreig DeVault, LLP to represent the Credit Union in connection with Dilley's Counterclaim.

78.    Furthermore, despite retaining additional counsel to defend against Dilley's Counterclaim as a potential class action, the Credit Union still did not report Dilley's Counterclaim to New York Marine.

79.    Since approximately March 17, 2022, the Credit Union has been represented in the Lawsuit by Kreig DeVault, LLP and Krisor & Associates.

80.    The Credit Union never sought approval from New York Marine for Kreig DeVault, LLP or Krisor & Associates to represent the Credit Union in the Lawsuit.

81.    On March 17, 2022, the Superior Court granted the Credit Union's motion for enlargement of time to respond to Dilley's motion for leave to amend.

82.    On September 19, 2022, the Superior Court granted Dilley's motion for leave to amend and denied the Credit Union's opposition.

83.    On September 20, 2022, Dilley filed a First Amended Answer and Counterclaim.

84.    A true and correct copy of the First Amended Answer and Counterclaim is attached as Exhibit N.

85.    In the First Amended Answer and Counterclaim, Dilley asserted a class action to redress the Credit Union's alleged unlawful repossession practices and procedures.

86.    In Count I of the First Amended Answer and Counterclaim, Dilley asserted UCC violations under IC §§ 26-1-9.1-611 through 26-9.1-614.

87.    In Count II of the First Amended Answer and Counterclaim, Dilley asserted UCC violations under IC § 26-1-9.1-616.

88.    In the First Amended Answer and Counterclaim, Dilley sought statutory relief under the UCC, interest, attorney fees, injunctive relief, and declaratory relief.

89.    On or before September 20, 2022, the Credit Union still had not reported Dilley's Counterclaim to New York Marine.

**I.    Dilley Amends Dilley's Counterclaim a Second Time**

90.    On November 16, 2022, the Credit Union filed, through counsel, an Answer and Affirmative Defenses to Amended Counterclaim.

91.    On May 8, 2023, the Indiana Superior Court in the Lawsuit granted the Credit Union leave to amend its answer to Dilley's Counterclaim.

92.    On May 18, 2023, the Credit Union filed, through counsel, an Amended Answer and Affirmative Defenses to Amended Counterclaim.

93.    On May 23, 2023, Dilley filed a Second Amended Answer and Counterclaim.

94.    A true and correct copy of the Second Amended Answer and Counterclaim is attached as Exhibit O.

95.    In Count I of the Second Amended Answer and Counterclaim, Dilley asserted UCC violations under IC §§ 26-1-9.1-611 through 26-9.1-614.

96.    In Count II of the Second Amended Answer and Counterclaim, Dilley asserted UCC violations under IC § 26-1-9.1-616.

97.    On or before May 23, 2023, the Credit Union still did not report Dilley's Counterclaim to New York Marine.

98.    On June 2, 2023, the Credit Union, through counsel, filed a Motion for Enlargement of Time to Respond to Discovery Requests.

99.    On June 5, 2023, the Indiana Superior Court granted the Credit Union an extension to respond to discovery by July 5, 2023.

100.    On June 12, 2023, the Credit Union filed, through counsel, an Answer and Affirmative Defenses to Second Amended Counterclaim.

101.    On June 30, 2023, the Credit Union filed, through counsel, a Motion for Indefinite Enlargement of Time to Respond to Discovery Requests.

102.    In its Motion for Indefinite Enlargement of Time to Respond to Discovery Requests, the Credit Union asserted that the Credit Union and Dilley were currently engaged in settlement discussions to resolve the matter.

103.    On July 3, 2023, the Superior Court granted the Credit Union's Motion for Indefinite Enlargement of Time to Respond to Discovery Requests.

**J.    The Credit Union Reports the Lawsuit to New York Marine**

104.    On October 10, 2023, almost two years after Dilley's Counterclaim was filed, the Credit Union notified Allied Solutions ("Allied") via email of Dilley's Counterclaim for the first time.

105.    On October 11, 2023, New York Marine received the first notice of Dilley's Counterclaim via email from Allied.

106.    In its October 11, 2023, email, Allied specifically directed New York Marine's attention to a claims-made management and security liability policy, not the 2017–20 Policy, 2020–23 Policy, or 2023–26 Policy.

107.    A true and correct copy of the Credit Union's and Allied's October 10–11, 2023, emails are attached as Exhibit P.

108.    On October 13, 2023, New York Marine, via email, acknowledged receipt of the Credit Union's first notice of Dilley's Counterclaim.

109.    A true and correct copy of New York Marine's October 13, 2023, email is attached as Exhibit Q.

110.    In the October 13, 2023, email, New York Marine stated that no prior notice of Dilley's Counterclaim had been made prior to October 11, 2023.

111.    In the October 13, 2023, email, New York Marine's claims representative wrote:

> We are currently reviewing the late notice issue and will advise further. The policy requires as a condition precedent that notice must be received as soon as practicable, but no later than 60 days after expiration of the policy period. The Counterclaim was filed during the 4-17-2020 to 4-17-2023 policy period. If you have information indicating prior notice was sent to Coaction, formerly known as Prosight Specialty, prior to October 11, 2023, please provide such information for immediate review. New York Marine expressly reserves all rights and defenses as provided by the Liability Policy, as well as by law and in equity.

112.    The Credit Union did not dispute New York Marine's statements nor did it supply any information or documents showing it notified New York Marine of Dilley's Counterclaim prior to the first notice on October 11, 2023.

113.    On November 13, 2023, New York Marine sent a coverage determination letter to the Credit Union regarding the claims-made management and security liability policy identified in the October 11, 2023, email from Allied.

114.    On November 29, 2023, the Credit Union, through counsel, sent correspondence to New York Marine, disputing New York Marine's coverage position related to the claims-made management and security liability policy.

115. In the Credit Union's November 29, 2023, letter, the Credit Union did not deny that the Credit Union had not reported Dilley's Counterclaim to New York Marine before October 11, 2023.

116. On January 17, 2024, counsel for New York Marine responded to the Credit Union through written correspondence.

117. On February 1, 2024, the Credit Union for the first time notified New York Marine that the Credit Union and Dilley previously attended mediation that was unsuccessful and at which the Credit Union made settlement offers.

118. Not having ever been informed of the mediation, New York Marine had no opportunity for involvement in or consent to the settlement discussions.

119. On February 27, 2024, the Credit Union for the first time requested coverage under the 2017–20 Policy, the 2020–23 Policy, and 2023–26 Policy.

120. On March 19, 2024, New York Marine sent a coverage determination letter to the Credit Union regarding the 2017–20 Policy, 2020–23 Policy, and 2023–26 Policy.

121. A true and correct copy of the March 19, 2024, coverage determination letter is attached as Exhibit R.

**K.    The Credit Union's Settlement with Dilley**

122. On July 8, 2024, the Credit Union attended mediation with Dilley.

123. At the mediation, the Credit Union reportedly entered into a settlement with Dilley and the putative class, which included an assignment of the Credit Union's rights that included the 2017–20 Policy, 2020–23 Policy, and 2023–26 Policy (the "Settlement").

124.    Upon information and belief, the Settlement includes a promise by the Credit Union for a judgment against the Credit Union in the amount to be approved by the court in the underlying action between the Credit Union and Dilley.

125.    Upon information and belief, the Settlement includes an agreement by the Credit Union not to present evidence, object to evidence, question witnesses, make arguments, or appeal any decision or judgment in the underlying action between the Credit Union and Dilley.

126.    The Credit Union entered into the Settlement without consulting New York Marine and without obtaining New York Marine's consent.

127.    The Credit Union entered into the Settlement without giving New York Marine the opportunity to participate in settlement discussions.

128.    New York Marine attended mediation solely at the request of the Credit Union.

129.    New York Marine was only afforded the opportunity to participate in settlement discussions with Dilley and the putative class after the Credit Union had already assigned its rights to the 2017–20 Policy, 2020–23 Policy, and 2023–26 Policy, and after the Credit Union had already made promises about merits and damages in the underlying action between the Credit Union and Dilley as part of the Settlement.

## <u>COUNT I – DECLARATORY JUDGMENT (2017–20 POLICY)</u>

130.    New York Marine hereby incorporates by reference the allegations contained in Paragraphs 1–129 of this Complaint as if set forth fully herein.

131.    To trigger potential coverage under the 2017–20 Policy, there must be an amount that the Credit Union is legally obligated to pay as damages "because of 'personal and advertising injury.'"

132.    Under the Commercial General Liability Coverage Form in the 2017–20 Policy, if a "suit" is brought against the insured, the insured must notify the insurer "as soon as practicable."

133.    The Credit Union learned of Dilley's Counterclaim on or about October 22, 2021.

134.    The Credit Union first notified New York Marine of the "suit" on or about October 11, 2023.

135.    The Credit Union did not notify New York Marine of the "suit" as "soon as practicable" after the Credit Union became aware of the "suit."

136.    New York Marine is entitled to a declaration from this Court that the Credit Union violated the above-referenced condition of the 2017–20 Policy, thereby barring coverage.

137.    Under the Commercial General Liability Coverage Form in the 2017–20 Policy, the insured must "[i]mmediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'"

138.    The Credit Union received legal papers related to Dilley's Counterclaim on or about October 22, 2021.

139.    The Credit Union did not immediately send New York Marine copies of any demands, notices, summonses, or legal papers received in connection with the "suit."

140.    New York Marine is entitled to a declaration from this Court that the Credit Union violated the above-referenced condition of the 2017–20 Policy, thereby barring coverage.

141.    Under the Commercial General Liability Coverage Form in the 2017–20 Policy, the insurer has a right to defend the insured against any "suit" seeking damages because of personal and advertising injury.

142.    The Credit Union retained counsel without New York Marine's approval to defend it in the action between the Credit Union and Dilley.

143.    The Credit Union did not afford New York Marine the right to defend its insured.

144.    New York Marine is entitled to a declaration from this Court that the Credit Union violated the above-referenced condition of the 2017–20 Policy, thereby barring coverage.

145.    Under the Commercial General Liability Coverage Form in the 2017–20 Policy, "[n]o insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

146.    The Credit Union engaged in mediation and voluntarily agreed to settle Dilley's Counterclaim without New York Marine's consent.

147.    New York Marine is entitled to a declaration from this Court that the Credit Union violated the above-referenced condition of the 2017–20 Policy, thereby barring coverage.

148.    Under an endorsement to the 2017–20 Policy, Exclusion 2 of the Commercial General Liability Policy provides, "The insurance does not apply to: . . . 'Personal and advertising injury' arising out of any access to or disclosure of any person's . . . confidential or personal information, including . . . financial information . . . ."

149.    The allegations in Dilley's Counterclaim assert claims related to access to or disclosure of financial information.

150.    New York Marine is entitled to a declaration from this Court that Dilley's Counterclaim is excluded from coverage under Exclusion 2 of the Commercial General Liability Policy in the 2017–20 Policy as modified by the endorsement.

151.    To the extent any coverage is afforded to the Credit Union, New York Marine is entitled to a declaration from this Court that the 2017-20 Policy only affords coverage for conduct that occurred between August 14, 2017, and August 14, 2020, in the coverage territory.

152.    To the extent any coverage is afforded to the Credit Union, New York Marine is entitled to a declaration from this Court that the 2017-20 Policy only affords coverage for the "damages because of 'personal and advertising injury,'" which does not include statutory damages as requested in Dilley's Counterclaim.

153.    Additional coverage limitations, definitions, conditions, and exclusions may exclude or limit coverage for the Credit Union with regard to Dilley's Counterclaim. New York Marine continues to fully reserve any and all rights, remedies, and defenses at law, in equity, and under the 2017–20 Policy in relation to Dilley's Counterclaim.

## COUNT II – DECLARATORY JUDGMENT (2020–23 POLICY)

154.    New York Marine hereby incorporates by reference the allegations contained in Paragraphs 1–153 of this Complaint as if set forth fully herein.

155.    To trigger potential coverage under the 2020–23 Policy, there must be an amount that the Credit Union is legally obligated to pay as damages "because of 'personal and advertising injury.'"

156.    Under the Commercial General Liability Coverage Form in the 2020–23 Policy, if a "suit" is brought against the insured, the insured must notify the insurer "as soon as practicable."

157.    The Credit Union learned of Dilley's Counterclaim on or about October 22, 2021.

158.    The Credit Union first notified New York Marine of the "suit" on or about October 11, 2023.

159.    The Credit Union did not notify New York Marine of the "suit" as "soon as practicable" after the Credit Union became aware of the "suit."

160.    New York Marine is entitled to a declaration from this Court that the Credit Union violated the above-referenced condition of the 2020–23 Policy, thereby barring coverage.

161.     Under the Commercial General Liability Coverage Form in the 2020–23 Policy, the insured must "[i]mmediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'"

162.     The Credit Union received legal papers related to Dilley's Counterclaim on or about October 22, 2021.

163.     The Credit Union did not immediately send New York Marine copies of any demands, notices, summonses, or legal papers received in connection with the "suit."

164.     New York Marine is entitled to a declaration from this Court that the Credit Union violated the above-referenced condition of the 2020–23 Policy, thereby barring coverage.

165.     Under the Commercial General Liability Coverage Form in the 2020–23 Policy, the insurer has a right to defend the insured against any "suit" seeking damages because of personal and advertising injury.

166.     The Credit Union retained counsel without New York Marine's approval to defend it in the action between the Credit Union and Dilley.

167.     The Credit Union did not afford New York Marine the right to defend its insured.

168.     New York Marine is entitled to a declaration from this Court that the Credit Union violated the above-referenced condition of the 2020–23 Policy, thereby barring coverage.

169.     Under the Commercial General Liability Coverage Form in the 2020–23 Policy, "[n]o insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

170.     The Credit Union engaged in mediation and voluntarily agreed to settle Dilley's Counterclaim without New York Marine's consent.

171.    New York Marine is entitled to a declaration from this Court that the Credit Union violated the above-referenced condition of the 2020–23 Policy, thereby barring coverage.

172.    Under an endorsement to the 2020–23 Policy, Exclusion 2 of the Commercial General Liability Policy provides, "The insurance does not apply to: . . . 'Personal and advertising injury' arising out of any access to or disclosure of any person's . . . confidential or personal information, including . . . financial information . . . ."

173.    The allegations in Dilley's Counterclaim assert claims related to access to or disclosure of financial information.

174.    New York Marine is entitled to a declaration from this Court that the Dilley's Counterclaim is excluded from coverage under Exclusion 2 of the Commercial General Liability Policy in the 2020–23 Policy as modified by the endorsement.

175.    To the extent any coverage is afforded to the Credit Union, New York Marine is entitled to a declaration from this Court that the 2020–23 Policy only affords coverage for conduct that occurred between August 14, 2020, and August 14, 2023, in the coverage territory.

176.    To the extent any coverage is afforded to the Credit Union, New York Marine is entitled to a declaration from this Court that the 2020–23 Policy only affords coverage for the "damages because of 'personal and advertising injury,'" which does not include statutory damages as requested in Dilley's Counterclaim.

177.    Additional coverage limitations, definitions, conditions, and exclusions may exclude or limit coverage for the Credit Union with regard to Dilley's Counterclaim. New York Marine continues to fully reserve any and all rights, remedies, and defenses at law, in equity, and under the 2020–23 Policy in relation to Dilley's Counterclaim.

## COUNT III – DECLARATORY JUDGMENT (2023–26 POLICY)

178.    New York Marine hereby incorporates by reference the allegations contained in Paragraphs 1–177 of this Complaint as if set forth fully herein.

179.    To trigger potential coverage under the 2023–26 Policy, there must be an amount that the Credit Union is legally obligated to pay as damages "because of 'personal and advertising injury.'"

180.    Under the Commercial General Liability Coverage Form in the 2023–26 Policy, if a "suit" is brought against the insured, the insured must notify the insurer "as soon as practicable."

181.    The Credit Union learned of Dilley's Counterclaim on or about October 22, 2021.

182.    The Credit Union first notified New York Marine of the "suit" on or about October 11, 2023.

183.    The Credit Union did not notify New York Marine of the "suit" as "soon as practicable" after the Credit Union became aware of the "suit."

184.    New York Marine is entitled to a declaration from this Court that the Credit Union violated the above-referenced condition of the 2023–26 Policy, thereby barring coverage.

185.    Under the Commercial General Liability Coverage Form in the 2023–26 Policy, the insured must "[i]mmediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'"

186.    The Credit Union received legal papers related to Dilley's Counterclaim on or about October 22, 2021.

187.    The Credit Union did not immediately send New York Marine copies of any demands, notices, summonses, or legal papers received in connection with the "suit."

188.    New York Marine is entitled to a declaration from this Court that the Credit Union violated the above-referenced condition of the 2023–26 Policy, thereby barring coverage.

189.    Under the Commercial General Liability Coverage Form in the 2023–26 Policy, the insurer has a right to defend the insured against any "suit" seeking damages because of personal and advertising injury.

190.    The Credit Union retained counsel without New York Marine's approval to defend it in the action between the Credit Union and Dilley.

191.    The Credit Union did not afford New York Marine the right to defend its insured.

192.    New York Marine is entitled to a declaration from this Court that the Credit Union violated the above-referenced condition of the 2023–26 Policy, thereby barring coverage.

193.    Under the Commercial General Liability Coverage Form in the 2023–26 Policy, "[n]o insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

194.    The Credit Union engaged in mediation and voluntarily agreed to settle Dilley's Counterclaim without New York Marine's consent.

195.    New York Marine is entitled to a declaration from this Court that the Credit Union violated the above-referenced condition of the 2023–26 Policy, thereby barring coverage.

196.    Under an endorsement to the 2023–26 Policy, Exclusion 2 of the Commercial General Liability Policy provides, " The insurance does not apply to . . . 'Personal and advertising injury' arising out of any access to or disclosure of any person's . . . confidential or personal information, including . . . financial information . . . ."

197.    The allegations in Dilley's Counterclaim assert claims related to access to or disclosure of financial information.

198.    New York Marine is entitled to a declaration from this Court that the Dilley's Counterclaim is excluded from coverage under Exclusion 2 of the Commercial General Liability Policy in the 2023–26 Policy as modified by the endorsement.

199.    Under an endorsement to 2023–26 Policy, an exclusion provides that coverage under the Commercial General Liability Coverage Form "does not apply to . . . 'personal and advertising injury' resulting from the rendering of or the failure to render financial services by any insured to others."

200.    The same endorsement provides that financial services include, but are not limited to, lending money, repossessing personal property, credit reporting, and maintaining financial accounts or records.

201.    The allegations in Dilley's Counterclaim assert claims related to the lending of money, repossessing of personal property, reporting of credit, and maintaining financial accounts or records.

202.    New York Marine is entitled to a declaration from this Court that the Dilley's Counterclaim is excluded from coverage under the endorsement to the 2023–26 Policy that adds an exclusion to the Commercial General Liability Policy regarding financial services.

203.    To the extent any coverage is afforded to the Credit Union, New York Marine is entitled to a declaration from this Court that the 2023–26 Policy only affords coverage for conduct that occurred between August 14, 2023, and August 14, 2026, in the coverage territory.

204.    To the extent any coverage is afforded to the Credit Union, New York Marine is entitled to a declaration from this Court that the 2023–26 Policy only affords coverage for the "damages because of 'personal and advertising injury,'" which does not include statutory damages as requested in Dilley's Counterclaim.

31

205.    Additional coverage limitations, definitions, conditions, and exclusions may exclude or limit coverage for the Credit Union with regard to Dilley's Counterclaim. New York Marine continues to fully reserve any and all rights, remedies, and defenses at law, in equity, and under the 2023–26 Policy in relation to Dilley's Counterclaim.

WHEREFORE, New York Marine respectfully requests the following relief:

1.    For an Order declaring that New York Marine has no obligation to the Credit Union with regard to Dilley's Counterclaim under the 2017–20 Policy, the 2020–23 Policy, and the 2023–26 Policy, or otherwise;

2.    For an Order declaring that New York Marine has no obligation to the Credit Union with regard to any amounts consisting of statutory penalties;

3.    For an Order awarding New York Marine its costs and disbursements herein; and

4.    For such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

New York Marine demands a trial by jury on all issues so triable.

KOPKA PINKUS DOLIN

By: /s/ Minh C. Wai
  Minh C. Wai, Esq.
  9801 Connecticut Drive
  Crown Point, IN 46307
  Phone: (219) 794-1888

  In Association With:
  Joshua A. Dorothy, Esq. (*pro hac vice* pending)
  Nicholas J. Sideras, Esq. (*pro hac vice* pending)
  Gregerson, Rosow, Johnson & Nilan, Ltd.
  100 Washington Avenue South, Suite 1550
  Minneapolis, MN 55401
  Phone: (612) 338-0755

  **ATTORNEYS FOR NEW YORK MARINE AND
  GENERAL INSURANCE COMPANY**

## VERIFICATION

I, Judy Edwards, declare as follows:

1.     I am the Claims Manager – Credit Unions for Coaction Specialty Insurance Group, Inc. and am authorized to verify the Complaint in *New York Marine and General Insurance Company v. Notre Dame Federal Credit Union and David Dilley*.

2.     I have personal knowledge of all the facts contained in the Complaint. The information in the Complaint has been collected and made available to me as an employee for Coaction Specialty Insurance Group, Inc., the parent company for New York Marine and General Insurance Company. This Complaint is based on information and material known at this time and New York Marine and General Insurance Company reserves the right to amend its Complaint.

3.     I verify and declare under penalty of perjury that the foregoing Complaint is true and correct to the best of my knowledge, information, and belief.

This Verification was executed in Franklin, Wisconsin on September 19, 2024.

Judy Edwards
Judy Edwards

34