IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> NOTRE DAME FEDERAL CREDIT UNION, ET AL., <br><br> Defendant. | Case No.: 24-cv-00807-CCB-SJF <br><br> **PLAINTIFF NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S RESPONSE TO MOTION TO DISMISS** |

## INTRODUCTION

This case is the second lawsuit between plaintiff New York Marine and General Insurance Company ("New York Marine") and defendants Notre Dame Federal Credit Union (the "Credit Union") and David Dilley ("Dilley") and, except addressing different insurance policies.[1] Dilley moves this Court to dismiss this lawsuit for a lack of subject-matter jurisdiction. Contrary to Dilley's assertions, this Court does have diversity jurisdiction over the parties to this lawsuit. In the alternative, this Court should deny dismissal of the lawsuit because the Credit Union's counsel has represented that the Credit Union is assigning its rights to coverage to Dilley, meaning that the only appropriate parties to this dispute will be New York Marine and Dilley—two diverse parties.

---

[1] *See N.Y. Marine & Gen. Ins. Co. v. Notre Dame Fed. Credit Union*, Court File No. 24-cv-00177-DRL-SJF (filed Feb. 26, 2024). A third lawsuit was brought by unrelated insurance carriers against the Credit Union and Dilley. *Starnet Ins. Co. v. Notre Dame Fed. Credit Union*, Court File No. 24-cv-00597-DRL-SJF (filed July 23, 2024).

## DISCUSSION

**This Court has diversity jurisdiction over this dispute regarding coverage under the insurance policies issued by New York Marine.**

Diversity jurisdiction exists where two conditions are met: (1) the amount in controversy exceeds $75,000.00; and (2) complete diversity exists between the parties. 28 U.S.C. § 1332. The sole issue raised by Dilley is whether diversity exists based on the Credit Union's status as a federally chartered credit union; he makes no challenge to the amount in controversy. ECF 4. As detailed below, this Court has diversity jurisdiction over this case.

### A. *Recent developments in the caselaw related to federally chartered credit unions supports concluding that this Court has diversity jurisdiction.*

Dilley principally argues that the Credit Union as a federally chartered credit union is not a citizen of any state, such that diversity jurisdiction does not exist. ECF 4 at 2–3. Dilley fails to acknowledge developments in the caselaw on this point, displacing the caselaw that he relies on for dismissal.

The Federal Credit Union Act ("FCUA") states, in, relevant part, a "[f]ederal credit union shall be a body corporate" upon approval of the Federal Credit Union Administration. 12 U.S.C. § 1754. The Fourth Circuit Court of Appeals recognized that this language "explicitly states that federally chartered credit unions are, in fact, corporations." *Navy Fed. Credit Union v. Ltd. Fin. Servs., LP*, 972 F.3d 344, 354 (4th Cir. 2020). Because a federally chartered credit union is treated as a corporation, it is considered to be a citizen of the state where it has its principal place of business for purposes of diversity jurisdiction. *Id.* at 364; *see also* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated *and of the State or foreign state where it has its principal place of business*[.]") (emphasis added).

Courts within this Circuit have found the Fourth Circuit's reasoning in *Navy Federal Credit Union* to be persuasive in a published opinion. In *BCBSM, Inc. v. Walgreen Co.*, the federal Northern District of Illinois court relied upon *Navy Federal Credit Union.* 642 F. Supp. 3d 732 (N.D. Ill. 2022). The case involved defendant Walgreen Co. challenging jurisdiction over a congressionally chartered corporation with its principal place of business in Washington, D.C. *Id.* at 734. The Court identified no "controlling authority," but found the rationale in *Navy Federal Credit Union* to be "directly on point." *Id.* at 740–41. The *BCBSM* Court quoted extensively from the *Navy Federal Credit Union* decision that:

> [t]he plain meaning of *and* in context here is 'in addition to' . . . . Section 1332(c)(1) thus requires us to interpret and give effect to the second clause [regarding citizenship based on principal place of business] even when the first clause [regarding the state of incorporation] does not specify a citizenship. . . . Congress has since plainly provided a general rule for corporate citizenship, and that text grants a federal corporation the citizenship of its principal place of business.

*Id.* at 741 (quoting *Navy Fed. Credit Union*, 972 F.3d at 350). The *BCBSM* Court went on to find the reasoning "persuasive and leads to the simple conclusion that [the congressionally chartered corporation was] a citizen of Washington, D.C." *Id.* The same reasoning should be applied here: the Credit Union has its principal place of business in Notre Dame, Indiana, and therefore is a citizen of Indiana. ECF 1 at ¶ 2.[2]

---

[2] New York Marine anticipates that Dilley will file additional material with his reply brief in support of his motion to dismiss, as he has in a similar case with another insurer regarding the Credit Union as well. *See Starnet Ins. Co. v. Notre Dame Fed. Credit Union*, Court File No. 24-cv-00597-DRL-SJF, ECF 24. To the extent this Court considers such information, the Credit Union previously admitted in the other lawsuit brought by New York Marine that the Credit Union's principal place of business is Indiana. *See N.Y. Marine & Gen. Ins. Co. v. Notre Dame Fed. Credit Union*, Court File No. 24-cv-00177, ECF 24-1 at ¶ 4 (Ex. C ¶ 10).

Instead of acknowledging the recent development in the caselaw related to federally chartered credit unions (and federally chartered corporations, generally) applied by courts in this Circuit, Dilley relies on cases that look at other types of federally chartered entities, without confronting the above analysis. *See* ECF 4. Dilley relies on *Hukic v. Aurora Loan Services*, a case involving a federally chartered savings association, not the relevant entity here. 588 F.3d 420, 427–28 (7th Cir. 2009). This case does not compel the Court to reach a different conclusion than the *Navy Federal Credit Union* Court. The language in *Hukic* that Dilley relies on has been recognized as dicta by the *BCBSM* Court. The *BCBSM* Court criticized parties that used the same language that Dilley cites because it is "dicta" and that the *Hukic* Court:

> made no holding about the defendant's citizenship. Moreover, the court merely acknowledged other courts' holdings, neither endorsing nor rejecting them. The court did not address whether, in its own view, the "specific statutory provision" of § 1332(c)(1) deeming a corporation a citizen of the state of its principal place of business superseded *Bankers Trust*.

642 F. Supp. 3d at 738 (footnote omitted). This Court should similarly reject Dilley's reliance on the dicta in *Hukic* as not compelling a result in his favor.

The remaining cases that Dilley points to are similarly not persuasive. Dilley directs this Court to cases of *Harris v. American Legion*, 162 F. Supp. 700 (S.D. Ind. 1958), and *Rogers v. Relitz*, No. 22-cv-1223-pp, 2022 WL 17082035 (E.D. Wis. Nov. 18, 2022). None of these cases address a federally chartered credit union. *See Harris*, 162 F. Supp. at 703 (addressing jurisdiction over an American Legion for claims of defamation); *Rogers*, 2022 WL 17082035, at *4 (commenting that a party cannot sue an American Legion as a federally created corporation).[3]

---

[3] Dilley also cites to *Page v. Democratic National Committee*, a case assessing diversity jurisdiction related to law firm partners that were not United States citizens. 2 F.4th 630, 637 (7th Cir. 2021). These facts are not present here and the reasoning is not relevant to the analysis in *Navy Federal Credit Union,* when the entity here is a corporation, not a limited liability company as was the case in *Page*.

4

Because the recent developments related to federally chartered credit unions supports concluding that the Credit Union is a citizen of the state of Indiana, this Court has diversity jurisdiction over this matter as the parties are completely diverse.[4]

### B. *This Court has diversity jurisdiction under the localized-activity exception for federally chartered credit unions.*

Even if this Court does not find *Navy Federal Credit Union* to be persuasive—like the *BCBMS* Court found—this Court still has diversity jurisdiction under the localized-activity exception for federally chartered corporations.

In applying the localized-activities exception, courts examine the activities of the federally chartered corporation. *See Fed. Home Loan Bank of Indianapolis v. Bank of America Mortg'g Sec.*, No. 1:10-cv-1463-WTL-DML, 2011 WL 2133539, at *12–*13 (S.D. Ind. May 25, 2011). The relevant factors for this analysis are: (1) the corporation's principal place of business; (2) the existence of branch offices outside of the state; (3) the amount of business transacted by the corporation in different states; and (4) any other evidence that the corporation is local or national in nature. *Id.* at *13 (citing *Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995)). This analysis is designed to "not be simply a question as to whether that corporation's activities are *exclusive to one state.* Such an evaluation should involve a more expansive investigation into the corporation's business." *Fickling*, 58 F.3d at 606 (emphasis added). No one factor in this analysis is determinative. *See id.*

---

[4] Dilley further references a law review article in support of his proposition that federal credit unions are not subject to federal jurisdiction. ECF 4 (citing Paul E. Lund, *Federally Chartered Corporations and Federal Jurisdiction*, 36 Fla. St. U. L. Rev. 317, 370 n.303 (2009)). This law review article predates the developments since *Navy Federal Credit Union.* Because this article fails to squarely address these developments, and fails to adhere to the plain language of 28 U.S.C. § 1332(c), this Court should give no weight to its analysis related to jurisdiction involving federally chartered credit unions.

In looking at the factors discussed in *Fed. Home Loan Bank*, the factors show that the localized-activity exception applies. The Credit Union's corporate office is located in Notre Dame, Indiana. ECF 1 at ¶ 2.[5] Eight of the Credit Union's ten branch locations are in Indiana. *Id.* The Credit Union admitted in its answer in the other lawsuit brought by New York Marine that its principal place of business is in Indiana.[6]

New York Marine anticipates that Dilley will argue that the Credit Union, in addition to its Indiana branches, has two branches in Arizona and one branch in Michigan.[7] Dilley's claim is only partially true. In the materials Dilley will likely rely upon, the Credit Union Profile only lists that a branch location "will open soon" in Michigan, not that a location is open.[8] The Credit Union did not have a branch there at the time this lawsuit commenced, and the potential future operations cannot be considered to defeat diversity jurisdiction. *See Skyes v. Cook Inc.*, 72 F.4th 195, 206 (7th Cir. 2023) (recognizing that jurisdiction is determined at the time of filing); *see also Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 575 (2004) ("[A]llowing a citizenship change to cure the jurisdictional defect that existed at the time of filing would contravene the principle articulated by Chief Justice Marshall in *Conolly*. We decline to do today what the Court has refused to do for the past 175 years." (footnote omitted)). Furthermore, the existence of branch locations in other states does not deprive application of the localized-activity exception. *See, e.g., Mungo v. Minn. Life Ins. Co.*, No. 0:11–464–JFA, 2011 WL 2516934, at *3–4 (D.S.C. June 23, 2011)

---

[5] *See N.Y. Marine & Gen. Ins. Co. v. Notre Dame Fed. Credit Union*, Court File No. 24-cv-00177, ECF 24, 4.
[6] *Id.* at 3–4.
[7] *See N.Y. Marine & Gen. Ins. Co. v. Notre Dame Fed. Credit Union*, Court File No. 24-cv-00177, ECF 36, ¶ 13.
[8] *Id.*

(applying localized-activity exception where a minority of branch locations were outside the state of South Carolina because the operations remained "highly centralized in South Carolina").

New York Marine expects that Dilley will also rely on two distinguishable cases, both of which involved much greater evidence of multistate activity.

First, Dilley may point to *Am. Airlines Fed. Credit Union v. Eck*, No. 18 C 599, 2018 WL 2332065, at *2 (N.D. Ill. May 23, 2018). In *Am. Airlines Fed. Credit Union*, the case involved a federally chartered credit union that conducted its business over a "widespread area." 2018 WL 2332065, at *2. The credit union began in Illinois, moved and chartered in the state of New York, then moved to Texas. *Id.* The credit union also allowed anyone working in the "Airport Transportation Industry," which the credit union acknowledged covered 30% of its membership in Texas with the remaining 70% in eight identified states with additional states unnamed. *Id.* at *3. None of these facts are present here.

Second, Dilley may rely on *Park Heritage Federal Credit Union v. Fiserv Solutions, Inc.* In *Park Heritage Federal Credit Union*, the case involved a federally chartered credit union that had one branch location in New York but had significant activity in other states. No. 16-cv-7734 (KBF), 2017 WL 74280 (S.D.N.Y. Jan. 4, 2017). Although the credit union had one location, it secured collateral in eight states, and repossessed collateral in six states within the two years before the action commenced. *Id.* at *3, *6. The credit union also "maintain[ed] deposit accounts for *five credit unions based in four states other than New York*." *Id.* (emphasis added). Moreover, the credit union "co-employ[ed]" its employees with a Georgia company and an Illinois credit union "process[ed] certain [some of the credit union's] transactions." *Id.*

Dilley may attempt to rebuff the Credit Union's localization in Indiana by relying on shared branch locations, surcharge-free ATMs, and mobile or online banking. These matters do not

support a finding that the Credit Union is operating nationally to defeat application of the localized-activity exception. While some courts have commented on the ability of customers to use online banking and access their funds outside of the state, those cases also involved credit unions that had substantial operations and assets in different states. *See Am. Airlines Fed. Credit Union*, 2018 WL 2332065, at *3; *Parks Heritage Credit Union*, 2017 WL 47280, at *6. Dilley cannot rely on these limited portions of the courts' opinions without the greater context of the actual activity of the institutions at issue. *See Armour & Co. v. Wantock*, 323 U.S. 126, 132–33 (1944) ("It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the case under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court."). Furthermore, such reasoning would effectively eliminate diversity jurisdiction for any federally chartered credit union operating within the modern-banking industry. Dilley essentially argues that the only way for a credit union to be sufficiently localized is for the credit union to operate as a cash depository that allows customers to access funds only within a particular state, and does not permit customers to utilize Visa or Mastercard credit or debit cards, online banking, or out-of-state checks or transfers of funds to anywhere out of state. This argument has not been adopted by the Courts that Dilley relies upon and it presents an irrational position.

### C. *In the alternative, the Credit Union's recent representation that the Credit Union is assigning its rights to coverage to Dilley supports diversity jurisdiction.*

On October 7, 2024, counsel for the Credit Union filed in the other New York Marine lawsuit a motion to withdraw.[9] As part of its filings, the Credit Union's counsel represented that a settlement existed between the Credit Union and Dilley, and that "Notre Dame Credit Union

---

[9] *See N.Y. Marine & Gen. Ins. Co. v. Notre Dame Fed. Credit Union*, Court File No. 24-cv-00177, ECF 37.

agree[d] to assign to Dilley Notre Dame Credit Union's rights under Plaintiff's insurance policy (and other policies)."[10] Further, the Credit Union's counsel asserted that: "Notre Dame Credit Union and Dilley agree as part of the settlement [in the underlying lawsuit] that Dilley will be assigned the rights to certain insurance policies and that Dilley will prosecute and defend the insurance coverage issues including the insurance coverage claims at issue in this lawsuit."[11]

Even if this Court lacks diversity jurisdiction on the grounds addressed above, this Court will have diversity jurisdiction based on the assignment of rights from the Credit Union to Dilley. Dilley has previously conceded in the other New York Marine case that there is no issue of diversity between him and New York Marine.[12] Further, Dilley does not challenge that the amount in controversy is sufficient for the threshold required for diversity jurisdiction. *See generally* ECF 4. Accordingly, in the alternative to the bases described above, this Court can determine that diversity jurisdiction also exists based on Dilley's attempted enforcement of rights under the policies and the ongoing dispute between citizens of two different states. The Court may therefore continue to exercise jurisdiction over this case and it should proceed to decide the merits of the dispute regarding coverage under the policies issued by New York Marine.

---

[10] *Id.* at 2.
[11] *Id.*
[12] *See N.Y. Marine & Gen. Ins. Co. v. Notre Dame Fed. Credit Union*, Court File No. 24-cv-00177, ECF 36.

## CONCLUSION

In sum, this Court has jurisdiction over the parties because: (1) the Credit Union is a corporation with its principal place of business in Indiana; (2) the Credit Union's localized activity supports a finding that it is an Indiana citizen; or (3) the Credit Union's assignment of its rights to Dilley leaves a dispute between citizens of two different states. Accordingly, this Court should deny Dilley's motion to dismiss.

GREGERSON, ROSOW, JOHNSON & NILAN, LTD.

By: /s/Joshua A. Dorothy
Joshua A. Dorothy, Esq. (*pro hac vice*)
Nicholas J. Sideras, Esq. (*pro hac vice*)
Gregerson, Rosow, Johnson & Nilan, Ltd.
100 Washington Avenue South, Suite 1550
Minneapolis, MN 55401
Phone: (612) 338-0755

IN ASSOCIATION WITH:
KOPKA PINKUS DOLIN
Minh C. Wai, Esq.
9801 Connecticut Drive
Crown Point, IN 46307
Phone: (219) 794-1888

**ATTORNEYS FOR NEW YORK MARINE AND GENERAL INSURANCE COMPANY**