Filed: 12/11/2024 2:51 PM
Kosciusko Superior Court 4
Kosciusko County, Indiana

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN KOSCIUSKO SUPERIOR COURT |
| | ) SS: | |
| KOSCIUSKO COUNTY | ) | CAUSE NO. 43D04-2109-CC-000568 |

| | |
|---|---|
| Notre Dame Federal Credit Union | ) |
| | ) |
|     Plaintiff/Counterclaim-Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| David Dilley | ) |
| | ) |
| Defendant/Counterclaimant. | ) |

**Unopposed Motion for Preliminary**
**Approval of Class Action Settlement**

Defendant/Counterclaimant David Dilley ("Claimant") and pursuant to Ind. Trial Rule 23(E), respectfully moves the Court to enter an order preliminarily approving the proposed Settlement Class and Agreement (attached as Exhibit 1) as fair, reasonable and adequate under Ind. T.R. 23, and direct notice to the Settlement Class as provided for in the Agreement.

    **1.**    **The Settlement Class's Claims.** Claimant alleges, among other things, that Notre Dame Federal Credit Union ("Credit Union") violated the Uniform Commercial Code, as adopted by Indiana (the "IN UCC") by mailing deficient presale notices and/or selling their collateral without mailing them an appropriate post-repossession notice (a "presale notice") in compliance with § 26-1-9.1-611(b) of the IN UCC or a post-sale notice in compliance with § 26-1-9.1-616, among other allegations of liability.

    **2.**    **Class Relief.** The Settlement Agreement provides the Settlement Class Members with substantial benefits, including monetary damages of $1,650,000, writing off any deficiency balance Credit Union claims they owe, and credit repair by

1

# Exhibit 1

Credit Union requesting the major credit bureaus to delete the Settlement Class Members' account associated with the loan related to their repossession as stated in the Settlement Agreement.

**3.      Standard for Class Certification.** Certification of a class action is governed by Indiana Trial Rule 23. Trial Rule 23(A) imposes four requirements:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

*Perdue v. Murphy*, 915 N.E.2d 498, 504 (Ind. Ct. App. 2009). Further, because Claimant seeks certification under T.R. 23(B)(3), two more requirements must be met: "predominance" ("the questions of law or fact common to the members of the class predominate over any questions affecting only individual members") and "superiority" ("a class action is superior to other available methods for the fair and efficient adjudication of the controversy"). In sum, the six prerequisites for certifying a class under Trial Rule 23(B)(3) are (1) numerosity, (2) commonality, (3) typicality, (4) adequacy of representation, (5) predominance, and (6) superiority.

"Class certification is essentially a procedural order and carries no implication about the merits of the case." *Clark-Floyd Landfill, LLC v. Gonzalez*, 150 N.E.3d 238, 244 (Ind. Ct. App. 2020), transfer denied, 160 N.E.3d 513 (Ind. 2020) (quoting *LHO*

*Indianapolis One Lessee, LLC v. Bowman*, 40 N.E.3d 1264, 1268 (Ind. Ct. App. 2015)). Instead of judging the likelihood of success on the class claims, Indiana courts "assum[e] the merits of an action," and then "must determine whether the [class proponent] has satisfied the requirements for class certification under Trial Rule 23." *Id*. (quoting *LHO Indianapolis One Lessee, LLC*, 40 N.E.3d at 1268.

       4.   **Numerosity**. Trial Rule 23(A)(1), requires "the class is so numerous that joinder of all members is impracticable." Indiana case law has not examined this requirement in great depth. However, other courts have observed numerosity is typically presumed when 40 or more class members comprise the class. *NIPSCO v. Bolka*, 693 N.E.2d 613, 617 (Ind. Ct. App. 1998) ("Courts interpreting the identical provision of the federal rule have recognized that while numerosity analysis does not rest on a 'magic' number, permissive joinder has been deemed impracticable where class members number forty or more."). Here, Credit Union approximates 915 individuals comprise the Settlement Class. Joinder of all Settlement Class Members would be impracticable.

       5.   **Commonality**. Trial Rule 23(A)(2) requires that "questions of fact common to the class" exist. *Bowman*, 40 N.E.3d at 1271. "Commonality" focuses on the class's characteristics. *Id*. Where the class representative's claims "are derived from a common nucleus of operative fact[s]," commonality is found. *Id*. Claimant and the Class have common characteristics that drive resolution of their claims: Claimant and the Settlement Class Members are consumers who had loans with Credit Union that resulted in (1) Credit Union taking possession of their vehicles, (2) Credit Union mailing them pre and post-sale notices substantially similar to the one mailed to

Claimant, and (3) Credit Union selling their vehicles. Resolving the sufficiency of Claimant's pre and post-sale notice claims will resolve the Settlement Class Members' claims. *Hopkins v. Kansas Teachers Cmty. Credit Union*, 265 F.R.D. 483, 488 (W.D. Mo. 2010) ("the basic common question is whether Defendant's presale notices complied with the notice requirements of the MoUCC. There are other common questions, but this lone example suffices to meet the commonality requirement."). Commonality is satisfied.

6.    **Typicality.** "In Indiana, 'typical' as used in T.R. 23(A)(3) does not demand proof of the existence of identical claims." *ConAgra, Inc. v. Farrington*, 635 N.E.2d 1137, 1141 (Ind. Ct. App. 1994) (internal citations omitted). Typicality "is satisfied if the representative plaintiff's claim is neither in conflict nor antagonistic to the class as a whole." Claimant's and each Settlement Class Member's claims arise from the same conduct: they missed payments on their loans and had their cars repossessed, but Credit Union allegedly violated the UCC by not sending proper repossession notices. Claimant and each Settlement Class Member seek the same legal remedy: damages under § 26-1-9.1-625, including damages for wrongful repossession, libel/slander/defamation, invasion of privacy, property damages, customer injury, and other uncertain or hard to quantify damages; punitive damages; injunctive relief; plus prejudgment interest and post-judgment interest. The typicality requirement is satisfied. *See, e.g, Hopkins*, 265 F.R.D. at 487 ("All Plaintiffs claim harm resulting from Defendant's allegedly deficient pre-sale notices and allegedly improper sales thereafter. All Settlement Class Members' claims, while not wholly identical, are similar to Hopkins's. The typicality requirement of Rule 23(a)(3) is met.").

7.     **Adequacy**. Trial Rule 23(a)(4) requires the Court to find the class representative is adequate before a class may be certified. Indiana's Trial Rule 23(A)(4) adequacy requirement has three components: 1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; 2) the named representative must have a sufficient interest in the outcome to ensure vigorous adequacy; and 3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. All three factors support class certification.

There are no conflicts and the Claimant has a sufficient interest because Claimant's interests are identical to those of the Settlement Class Members, and because he seeks the same form of relief as them and has demonstrated commitment to the litigation. The settlement also demonstrates adequacy because it achieved an excellent result for the Settlement Class Members and was reached after arm's length negotiations—including mediation—over multiple years of investigation, discovery, and motion practice. Adequacy is satisfied.

8.     **Predominance.** "There is no precise test for determining whether common questions of fact or law predominate; instead, Trial Rule 23(B)(3) requires a pragmatic assessment of the entire action and all the issues involved." *Bowman*, 40 N.E.3d at 1274. Essentially, "the predominance requirement directs that the common questions of law or fact be questions the resolution of which would make the class action a more efficient trial procedure than individualized actions." *Clark-Floyd Landfill, LLC*, 150 N.E.3d at 247. "Common questions" need not be "identical questions," however. *Id.*

"Cases regarding the legality of standardized documents and practices often result in the predomination of common questions of law or fact and are, therefore, generally appropriate for resolution by class action." *Sykes v. Mel Harris and Associates, LLC*, 285 F.R.D. 279, 293 (S.D. N.Y. Sep. 04, 2012). Resolution of whether the notices were deficient will resolve liability on all Settlement Class Members' claims. *Hopkins*, 265 F.R.D. at 488. The legal question of whether Credit Union's form presale and post-sale notices violated the IN UCC predominate over any individual issues that may arise. Predominance is satisfied here.

9. **Superiority**. In addition to "predominance," T.R. Rule 23(B)(3) requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. In *Connerwood Healthcare*, the Court of Appeals noted the class members' likely inability to "exercise[e] their own rights" weighed in favor of superiority. *Connerwood Healthcare*, 683 N.E.2d at 1329. Likewise, here, virtually all Settlement Class Members are unlikely to know they have a potential claim against Credit Union and do not have the means or resources to hire an attorney to investigate their potential UCC claims. NCLC, *Repossessions* § 13.2.4.6 ("Consumers rarely challenge creditor repossession conduct."). Allowing the case to proceed as a class action will be most Settlement Class Members' only chance to protect and vindicate their rights.

Plus, largely for the same reasons the predominance prong is satisfied, allowing Claimant to represent a class maximizes efficiency: the Settlement Class Members present substantively identical UCC claims that require resolution of common questions. "[C]hallenging the content of a standard form letter is the type of suit that

is more efficiently brought as a class action than as a series of individual actions, with the inefficiency, high costs, and the risk of inconsistent outcomes posed by that method." *Butto v. Collecto Inc.*, 290 F.R.D. 372, 386 (E.D.N.Y. 2013). Unsurprisingly, courts consistently find a class action is superior to other available methods of fair and efficient adjudication of the controversy when the Class's claims are based on deficient UCC presale notices. See e.g., *Hopkins*, 265 F.R.D. 483; *Chisolm v. Trans South Fin. Corp*, 194 F.R.D. 538 (ED. Va. 2000); *Walczak v. Onyx Acceptance Corp.*, 850 N.E. 2d 357 (Ill. App. 2d Dist. 2006); *Fielder v. Credit Acceptance Corp.*, 175 F.R.D. 313 (W.D. Mo. 1997); and *Yazzie v. Gurley Motor Co.*, 2015 WL 10818834 (D.N.M. Oct. 30, 2015). For example, the United States District Court of New Mexico thoroughly examined the "superiority" requirement in a similar UCC notice case and explained why cases like Claimant's satisfy the superiority requirement:

> [Class] certification has obvious benefits. Aggregation of the proposed class member's consumer protection claims will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *See CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1096 (10th Cir. 2014). Because class members' claims are small, certification provides an added benefit: it offers a mechanism of relief for those who would otherwise "be without effective strength to bring their opponents into court." *Amchem*, 521 U.S. at 617. Finally, certification will ensure that consumers learn about their rights and share in financial recovery, if any, for Defendants' alleged violation of these rights. *See Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 403–404 (6th Cir. 1980) ("[T]he class action provides an opportunity to educate a segment of the public, those included in the class, of the obligations which creditors owe to them as credit consumers. This mass awakening of awareness could, indeed, be the greatest single benefit derived in an area of regulation in which the responsibility of policing falls principally on the shoulders of the private citizen and private counsel.")
>
> ....
>
> Having considered Defendants' arguments, however, the Court has reached the conclusion that class treatment is the fairest and most efficient manner for adjudicating the class members' claims.

*Yazzie*, 2015 WL 10818834 at *6 (D.N.M. Oct. 30, 2015).

By granting class certification, the economies of class certification will be realized, similarly situated parties can have their legal rights vindicated by professional legal help that would otherwise be inaccessible, and class litigation will produce consistent results. Superiority is satisfied.

**10.    Satisfaction of Ind. Trial Rule 23(E).** "Pursuant to Ind. Trial Rule 23(E), a trial court is required to evaluate a proposed settlement agreement in a class action to determine whether it is fair, reasonable and adequate, and to decide whether it is in the best interest of all class members." *Cmty. Care Centers, Inc. v. FSSA*, 716 N.E.2d 519 (Ind. Ct. App. 1999). The leading class action treatise has explained, the "goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness." Newberg on Class Actions § 13:13 (5th ed.). *See also Hefty v. All Other Members of the Certified Class*, 680 N.E.2d 843, 851 (Ind. 1997).

Here, the Settlement Agreement will provide tremendous benefits to all Settlement Class Members. At this time, no class has been certified by the Court. Further, relevant IN UCC law is underdeveloped, which causes uncertainty as to whether the Settlement Class would prevail at trial. Credit Union denies liability and could prevail at trial. Even if the Settlement Class were to prevail at trial, the case could be appealed and further delay Settlement Class Members from receiving any benefits from a favorable judgment. The Settlement Class will receive a material amount in settlement, $1,650,000; write off of certain deficiency balances; and certain credit repair. This Settlement Agreement also protects the Settlement Class Members from

being sued by Credit Union, which in most cases, results in a default judgment against them for the full amount Credit Union claims they owe. In return Credit Union receives a full release from the Settlement Class, without admission of liability. The Settlement Agreement followed a full day of mediation in Indianapolis, IN with well-respected mediator John Trimble.

**11.    Credit Union does not oppose this motion.**

WHEREFORE, Claimant respectfully requests the Court enter a preliminary approval order: (a) preliminarily approving the proposed Settlement Class and Settlement Agreement attached as Exhibit 1 as fair, reasonable and adequate under Ind. T.R. 23; (b) approving the appointment of Claimant as class representative and Claimant's undersigned counsel as class counsel for the Settlement Class; (c) approving a form of mailed notice substantially similar to the Class Mail Notice attached as **Exhibit A** to the Settlement Agreement; (d) approving a Long Form Notice substantially similar to the form attached as **Exhibit B** to the Settlement Agreement; (e) approving the appointment of American Legal Claims Services as the Settlement Administrator and directing it to distribute class notice and set up a website for the Settlement as contemplated in the Settlement Agreement; (f) setting a dates for a final fairness hearing, the Parties' submissions relative to the Settlement, including applications for payment of services to Claimant, application for attorney's fees, reimbursement of expenses to Class Counsel, and for members of the Settlement Class to exclude themselves (opt-out), object and/or appear at the fairness hearing; and (g) for such other and further provisions consistent with the terms and provisions of the Settlement Agreement as the Court may deem advisable.

Respectfully submitted,

*/s/ Jeffrey S. Gibson*
Jeffrey S. Gibson, #22362-49
**Wagner Reese, LLP**
11939 N. Meridian Street, Suite 100
Carmel, IN 46032
Phone: 317-446-8339

and

Martin L. Daesch, #7852-95-TA
Craig W. Richards, #7844-95-TA
Jesse Rochman, #8490-95-TA
**The Onder Law Firm**
110 E. Lockwood
St. Louis Missouri
314-963-9000

*Attorneys for the Claimant*

## CERTIFICATE OF SERVICE

I certify that on December _10th_, 2024, I electronically filed this Motion using the Indiana E-Filing System. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.

Libby Y. Goodknight          Scott S. Morrisson
Kay Dee Baird                KRIEG DeVAULT LLP
KRIEG DeVAULT LLP            12800 North Meridian Street

One Indiana Square
Suite 2800
Indianapolis, IN 46204
lgoodknight@kdlegal.com
kbaird@kdlegal.com

Suite 300
Carmel, IN 46280
smorrisson@kdlegal.com

/s/ Jeffrey Gibson
Jeffrey S. Gibson, #22362-49

WAGNER REESE, LLP
11939 North Meridian Street, Suite 100
Carmel, IN 46032
Tel: (317) 569-0000/Fax: (317) 569-8088
Email: jgibson@wagnerreese.com

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This SETTLEMENT AGREEMENT AND RELEASE ("Agreement"), made subject to approval by the Court, is by and between David Dilley ("Dilley") (also sometimes referred to herein as ("Class Representative")), individually and as the representative of the Settlement Class, as defined herein, and Notre Dame Federal Credit Union ("Credit Union"). The Class Representative, Credit Union, and the Settlement Class are also sometimes individually referred to as "Party" and collectively referred to as the "Parties."

WHEREAS, Dilley is the named counterclaimant in the civil action pending before the Kosciusko County Superior Court, Kosciusko County, Indiana, styled *Notre Dame Federal Credit Union v. David Dilley*, Cause No. 43D04-2109-CC-000568 (the "Counterclaim" or "Litigation"); and

WHEREAS, Dilley is asserting claims against Credit Union for alleged violations of Indiana's Uniform Commercial Code and common law, and seeks damages at least equal to the statutory minimum and other relief for himself and a class of persons similarly situated who obtained a secured collateralized loan or financing from Credit Union and the collateral was repossessed; and

WHEREAS, the Parties stipulate to a Settlement Class, pending preliminary and final approval by the Court, comprising and defined as "all persons to whom Credit Union mailed a presale notice or post-sale notice from February 11, 2012, to September 5, 2023."

WHEREAS, Class Counsel and Credit Union's Counsel have thoroughly investigated the facts relating to the claims alleged and the events and transactions underlying the Litigation, through formal and informal discovery, and have made a thorough study of the legal principles applicable to the claims being asserted against Credit Union; and

WHEREAS, on July 8, 2024, the Parties appeared for a Mediation before mediator John Trimble, Indianapolis, Indiana, and agreed to a settlement; and

WHEREAS, the Parties have agreed, subject to Court approval, to resolve the Litigation as between Class Representative, the Settlement Class and Credit Union under the terms of this Agreement; and

WHEREAS, the Parties and their respective counsel have engaged in arm's length negotiations concerning the settlement of the claims and causes of action being asserted against Credit Union in the Counterclaim; and

WHEREAS, the Class Representative and Class Counsel have concluded that a settlement with Credit Union under the terms of this Agreement will be fair, just, equitable, reasonable, adequate and in the best interests of Class Representative and the Settlement Class based upon their investigation, study, negotiations and discovery taken, and considering the contested issues, the expense and time to prosecute the Litigation against Credit Union through trial, the delays and the risks and costs of further prosecution against Credit Union, the uncertainties of complex litigation, and the benefits to be received under this Agreement;

WHEREAS, the Parties acknowledge and agree the Agreement constitutes a compromise in settlement of the claims and causes of action that have been or could be raised by the Class Representative and the Settlement Class (or members thereof) against Credit Union and/or the other Released Persons as to any collateralized loan or financing from Credit Union; and

WHEREAS, the Parties agree to arbitrate liability and damages for Dilley and the class he seeks to represent, as part of Dilley's pursuit of claims against Credit Union's

2

insurers that are being assigned to Dilley by Credit Union, in a separate process from the settlement of the Litigation, as discussed further below.

NOW THEREFORE, the undersigned Parties, each intending to be legally bound and acknowledging the sufficiency of the consideration and undertakings in this Agreement, agree, subject to approval of the Agreement by the Court, that the Litigation and the Released Claims against the Released Persons are finally and fully compromised and settled:

1. **Definitions**

As used in the Agreement, the following terms shall be defined:

1.1    **Arbitrator**. "Arbitrator" means the arbitrator chosen by the process outlined under Paragraph 2.

1.2    **Cash Fund**. "Cash Fund" means the amount to be paid under Paragraph 4.1.

1.3    **Class Counsel**. "Class Counsel" shall mean Class Representative's counsel, Jeff S. Gibson and the law firm Wagner Reese, LLP, 11939 N. Meridian St., Carmel, Indiana 46032, Martin L. Daesch, Craig W. Richards, of OnderLaw, LLC, 110 East Lockwood, St. Louis, Missouri 63119.

1.4    **Class Mail Notice**. "Class Mail Notice" (or "Short-Form Notice") means a notice in a form substantially the same as that attached as **Exhibit A.**

1.5    **Credit Union's Counsel**. "Credit Union's Counsel" means Kay Dee Baird, Brett J. Ashton, and Scott S. Morrisson of the law firm Krieg Devault LLP, One Indiana Square, Suite 2800, Indianapolis, Indiana 46204 and Richard A. Nussbaum II of the law firm of Sopko Nussbaum Inabnit Kaczmarek, 210 S. Michigan Street, South Bend, Indiana

3

46601.

1.6 **Court**. "Court" means the Kosciusko County Superior Court, Kosciusko County, Indiana.

1.7 **Deficiency Write-Off**. "Deficiency Write-Off" means all alleged deficiency account balances on the loans associated with allegedly deficient repossession notices for Settlement Class Members in Credit Union's records as of the Effective Date that Credit Union will write off for the benefit of the Settlement Class under Paragraph 4.11.

1.8 **Effective Date**. The "Effective Date" of the Agreement means the date when all the conditions in Paragraph 12 have occurred.

1.9 **Final Approval Order**. "Final Approval Order" means an order consistent with Paragraph 10, finally approving the Agreement and the "Settlement" under Indiana Trial Rule 23(B)(3).

1.10 **Final Hearing Date**. "Final Hearing Date" means the date set by the Court for the hearing on final approval of the "Settlement."

1.11 **Final Judgment**. "Final Judgment" means any judgment of the Court consistent with Paragraph 10.

1.12 **Long-Form Notice**. "Long-Form Notice" means a notice in a form substantially the same as that attached hereto as **Exhibit B**.

1.13 **Net Distributable Settlement Fund**. "Net Distributable Settlement Fund" means the "Cash Fund" *plus* any interest earned on the Cash Fund, while in escrow, *minus* the sum of (a) any incentive award approved by the Court and paid to the Class Representative; (b) any Litigation expenses and/or costs approved by the Court and

4

awarded to Class Counsel for this Litigation or for ancillary matters; (c) any award of attorneys' fees to Class Counsel; and (d) any and all costs of notice and settlement administration.

    1.14   **Person(s)**. "Person" shall mean an individual.

    1.15   **Preliminary Approval Order**. "Preliminary Approval Order" means an order consistent with Paragraph 8, preliminarily approving the Settlement, conditionally or preliminarily certifying a class for settlement, directing the issuance of class notice and scheduling a Settlement Hearing under Indiana Trial Rule 23(B)(3).

    1.16   **Released Persons**. "Released Persons" shall mean Credit Union and all of its past, present and future predecessors, successors, parents, subsidiaries, divisions, employees, affiliates, assigns, officers, directors, members, representatives, attorneys, and agents. Notwithstanding anything to the contrary, Released Persons does not include Credit Union's insurers.

    1.17   **Released Claims**. "Released Claims" shall mean any and all manner of claims, actions, causes of action, suits, rights, losses, fees, charges, complaints, claims, debts, sums of money, payments, liabilities, demands, obligations, costs, expenses, reckonings, contracts, agreements, executions, promises, damages, liens, judgments and demands, of whatever kind, type, nature, character, and description whatsoever, both at law or in equity, whether past, present or future, mature or not yet mature, known or unknown, suspected or unsuspected, contingent or noncontingent, whether based on federal, state, or local law, statute, ordinance, regulation, code, contract, common law, or any other source, that the Releasors ever had, now have, may have, or hereafter can, shall or may ever have against the Released Persons in any court, tribunal, arbitration panel, commission, agency,

5

or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, connected with, arising from, or in any way whatsoever relating to the claims which were or could have been alleged in the Litigation or which relate to the repossession and disposition of personal property collateral in connection with Credit Union's loans to the Settlement Class including, but not limited to, the adequacy or sufficiency of notices and disclosures by the Credit Union in connection with such repossession and disposition. Released Claims may not be construed in any manner that precludes recovery by Class Representative and the Settlement Class against Credit Union's insurers as contemplated by Paragraph 4.14.

1.18    **Releasors**. "Releasors" means the Class Representative and all Settlement Class Members, and each of their respective heirs, guardians, executors, administrators, assigns, predecessors, and successors, and any other Person claiming jointly with or by or through any or all of them. The Releasors shall not include: (a) any members of the Settlement Class who opt out of the Settlement under Paragraph 9; or (b) any person not identified by Credit Union as a member of the Settlement Class on the Class List furnished to the Settlement Administrator.

1.19    **Settlement**. Settlement means the compromise in settlement memorialized in this Agreement.

1.20    **Settlement Administrator**.  "Settlement Administrator" means American Legal Claims Services, Inc. or any other independent class action settlement administrator company retained by Class Counsel and approved by the Court to administer the Settlement.

1.21    **Settlement Class**. "Settlement Class" shall have the meaning defined in

6

Paragraph 3.1.

    1.22    **Settlement Class Member or Class Member**. "Settlement Class Member" or "Class Member" means any member of the Settlement Class who does not timely opt out of the Settlement under Paragraph 9. If a Settlement Class Member has died, then the Person's estate, heirs, representatives, successors or assigns shall be deemed a Settlement Class Member.

    1.23    **Settlement Class Member Payment**. "Settlement Class Member Payment" means the portion of the "Net Distributable Settlement Fund" to be paid to the respective Settlement Class Members under the Settlement. The Net Distributable Settlement Fund shall be divided on a pro rata basis in the amount as provided below to each Settlement Class Member by the issuance of a check by the Settlement Administrator. The amount of the Settlement check which shall be issued to Settlement Class Members shall be determined by multiplying the Net Distributable Settlement Fund by the Settlement Class Member's prorated percentage. The Settlement Class Member's prorated percentage is equal to a numerator consisting of 10% of the "Amount Financed" on the Settlement Class Member's loan plus the "Finance Charge" on the Settlement Class Member's loan and a denominator consisting of 10% of the aggregate "Amount Financed" for the Settlement Class plus the aggregate "Finance Charge" for the Settlement Class. If the "Amount Financed" and/or "Finance Charge" on the Settlement Class Member's loan is unavailable, averages will be used. For purposes of issuance of settlement Checks only, joint or co-obligors shall be issued separate checks equal to half of their Settlement Class Member Payment. Any Settlement checks for Settlement Class Members who are joint or co-obligors shall be mailed to the last known address of each co-obligor.

1.24    **Settlement Hearing**. "Settlement Hearing" means the hearing on final approval of the Settlement.

1.25    **Total Class Benefit**. "Total Class Benefit" means the quantifiable benefits conferred upon the Settlement Class, including (1) the Cash Fund of $1,650,000; (2) the value conferred on the Settlement Class by Credit Union writing off the deficiency balances as discussed in Paragraph 4.11 of the Agreement; and (3) the value conferred on the Settlement Class by having credit tradelines removed from Class Members' credit reports as discussed in Paragraph 4.12 of the Agreement.

2. **Arbitration Agreement**

2.1    **Arbitration**. The Parties agree to arbitrate all liability and damages issues in the Litigation for the Settlement Class for the purpose of pursuing Class Representatives' claims against Credit Union's insurers that are being assigned by Credit Union to Class Representatives, after the Court enters the Preliminary Approval Order of the Settlement. The parties authorize the Arbitrator to employ class procedures consistent with Indiana Trial Rule 23 or Federal Rule 23. Judgment of any court having jurisdiction may be entered on the arbitration award. Any awards in arbitration may be confirmed in the Litigation or by any other court of competent jurisdiction. The parties to the confirmation proceeding waive any right to remove the proceeding to federal court. This arbitration agreement is governed by the Federal Arbitration Act. The Credit Union's sole obligation is to pay the settlement amount in accordance with Paragraph 4.

2.2    **Arbitrator**. Class Counsel will produce to Credit Union's Counsel a list of two potential arbitrators. Credit Union's Counsel will select one individual from Class Counsel's list to oversee the arbitration. The arbitrator has the authority to resolve all issues

8

regarding liability and damages arising out of or in connection with the Litigation or Released Claims, including the issues embraced by Paragraph 4.14, and shall determine all issues regarding the arbitrability of any claim or dispute, including objections about the existence, scope, validity, enforceability, or arbitrability of any claim or counterclaim.

2.3    **Substitution of Arbitrator**. If the original Arbitrator becomes unavailable, the parties shall mutually agree on a substitute arbitrator who becomes the new Arbitrator under this Agreement. If the Parties cannot mutually agree on a substitute Arbitrator, Class Counsel will produce to Credit Union's Counsel a list of two potential substitute arbitrators, and Credit Union's Counsel will select one individual from the list to serve as the new Arbitrator.

2.4    **Arbitration Procedure**. Class Representatives are solely responsible for proceeding and all filings, fees, and costs of the arbitration referenced in Paragraph 2. Credit Union has no responsibility to pursue arbitration or to pay any fees or costs of the arbitration. All parties in arbitration will bear their own attorney's fees.

3. **Certification of the Settlement Class**

3.1    **Class Definition**. Class Counsel and Credit Union's Counsel will request the Court to approve a settlement for a class of persons (referred to and defined as the "Settlement Class"). The Settlement Class comprises: "all persons to whom Credit Union mailed a presale notice or post-sale notice from February 11, 2012, to September 5, 2023."

3.2    **Class List**. Acting in good faith and using its best efforts, ten (10) business days after the Court enters the Preliminary Approval Order of the Settlement, the Credit Union shall file a Motion for Order Directing Production of Data and Materials Containing Nonpublic Personal Financial Information with the Court including but not limited to

9

pursuant to the Gramm-Leach-Bliley Act, Pub. L. 106-102 and 16 CFR Part 313, et seq., with Class Counsel's consent ("Motion to Produce"). Credit Union previously provided an excel spreadsheet to Class Counsel containing a list of all members of the Settlement Class and information requested by Class Counsel such as initial loan amount, interest rate, and finance charges. Through no fault of Credit Union, not all of the requested information is available for each Class Member. Accordingly, Class Counsel utilized the available information to calculate the average potential damages to Class Members. Within thirty (30) days after the Motion to Produce is granted, Credit Union shall supplement the excel spreadsheet to add in the account name, address, account number and last four (4) digits of the account holder's social security number and provide such list to the Settlement Administrator for use by the Settlement Administrator only ("Class List"). The Settlement Administrator shall sign a confidentiality agreement which shall provide that the information provided shall be treated as confidential and shall be used only as required by this Agreement. The names, addresses, and other identifying information shall not be provided to Class Counsel by the Settlement Administrator. The Parties acknowledge that the Class List contains confidential information which may not be disseminated to anyone other than the Settlement Administrator. Credit Union shall provide the address data from its own database to the Settlement Administrator. The Settlement Administrator will process the addresses through the National Change of Address database as well as a service such as Probe 260 or Lexis/Nexis Accurint to update address data. The costs for such address updating shall be included in the costs of settlement administration and thus shall be deducted from the Cash Fund prior to calculation of the Net Distributable Settlement Fund or any Settlement check.

3.3    **Failure of Condition**. If the Agreement is not approved by the Court under the proposed Final Approval Order and Final Judgment, the Agreement, the conditional Settlement Class certification provided, the Settlement (including any modifications made with the consent of the Parties), and any action(s) taken or to be taken in connection therewith, shall be terminated and shall become null and void and have no further force or effect, the Preliminary Approval Order shall be vacated, the Parties shall be restored to their respective positions existing prior to the execution of the Agreement, including the return to Credit Union of the Cash Fund, consistent with Section 4.3 below. In addition, neither the Agreement, the stipulated Settlement Class, the Preliminary Approval Order, nor any other document relating to any of the foregoing, shall be relied on, referred to or used for any purpose with any further proceedings in the Litigation or any related action, including but not limited to class certification. In such case, or if the Agreement shall terminate or the settlement embodied does not become effective for any reason, the Agreement and all negotiations, orders and proceedings relating thereto shall be without prejudice to the rights of the Parties, who shall be restored to their respective positions existing prior to the execution of the Agreement, and evidence relating to the Agreement, and all negotiations, shall not be discoverable or admissible.

4. **Settlement Consideration and Distribution**

4.1    **Funding**. Within twenty (20) business days after the Preliminary Approval Order is entered and the receipt of an IRS Form W-9 from Dilley and Class Counsel, Credit Union shall deliver $1,650,000 into a qualified settlement fund established by the Settlement Administrator, subject to Paragraph 15 below, by check or some other mutually

11

agreeable form of payment. The account shall be labeled "Dilley Class Action Qualified Settlement Fund."

4.2     **Inviolable Cap**. The Cash Fund of $1,650,000 includes all costs, fees, or other payments to be made by Credit Union, including but not limited to the costs of notice and administration, attorneys' fees to Class Counsel, Litigation expenses and costs incurred by Class Counsel, and the Class Representative's incentive award. The Cash Fund amount of $1,650,000 is intended to be a hard and inviolable cap; in no event shall Credit Union, or any of the Released Persons ever be liable for any amount whatsoever in excess of the Cash Fund of $1,650,000, regardless of any circumstance whatsoever.

4.3     **Conditions for Return**. The Cash Fund shall be returned to Credit Union if the Settlement is rescinded, terminated, vacated, voided, or the Effective Date does not arrive for any other reason. For the avoidance of any doubt, the entire Cash Fund shall be returned to Credit Union if the Settlement is rescinded, terminated, vacated, voided or the Effective Date does not arrive for any other reason regardless of any costs incurred by Class Counsel for items such as the Settlement Administrator. If the Cash Fund is returned to Credit Union, Credit Union will reimburse Class Counsel for 50% of all reasonable costs incurred in connection with approval of this Settlement or administration of this Settlement.

4.4     **Fund Administration**. The Settlement Administrator, subject to such supervision and direction of the Court as may be necessary, shall be responsible for and shall administer and oversee the distribution of the Cash Fund and Net Distributable Settlement Fund under the terms of the Agreement.

4.5     **Settlement Administrator Confidentiality Agreement**.  The Settlement Administrator shall sign a confidentiality agreement, in a form acceptable to Credit Union

12

in its sole discretion, which shall provide that the information provided to it by Credit Union and the Class Members shall be treated as confidential and shall be used only as required by this Agreement. The names, addresses and other identifying information shall not be provided to Class Counsel except as provided herein.

4.6    **Reallocating for Opt Out.**   Subject to the provisions in Paragraph 9, if any members of the Settlement Class timely opt out and exclude themselves from the Settlement, the portion of the Net Distributable Settlement Fund attributable to said "opt outs" shall be reallocated to those remaining in the Settlement Class who have not opted out.   The Parties shall submit any required revisions to the Court prior to the Final Hearing Date.

4.7    **Settlement Class Member Payments.**    The Settlement Administrator and/or Class Counsel shall calculate the Total Class Benefit, Cash Fund and Net Distributable Settlement Fund, and the Settlement Administrator shall distribute the Net Distributable Settlement Fund to the Settlement Class Members in the pro rata amounts set forth in Paragraph 1.24, or as the Court may otherwise determine and approve.   Such distributions to the Settlement Class Members are referred to and defined as the "Settlement Class Member Payments." The Settlement Administrator shall distribute the Settlement Class Member Payments within thirty (30) days after the Effective Date by checks mailed to the Settlement Class Members.   The Settlement Administrator will re-mail any returned check to any new address disclosed.   If any check is returned a second time, or if any unreturned check is deemed void, the Settlement Administrator shall undertake reasonable efforts to locate a current address for the Settlement Class Member.

13

4.8    **Check Expiration.**  Following the expiration of 90 days after the Effective Date, all checks first issued to the Settlement Class Members as a Settlement Class Member Payment not cashed or negotiated will be deemed void, and the Settlement Administrator shall stop payment on such checks. Following the expiration of 180 days after the Effective Date, all checks reissued to the Settlement Class Members as a Settlement Class Member Payment not cashed or negotiated will be deemed void, and the Settlement Administrator shall stop payment on such checks. All portions of the Net Distributable Settlement Fund remaining 180 days after the Effective Date, less any costs or expenses associated with stopping payment on such checks, shall be first applied to any outstanding expenses owed to the Settlement Administrator, and then, if any money remains, shall be paid to Indiana Bar Foundation in accordance with Indiana Trial Rule 23(F).

4.9    **No Responsibility.** The Released Persons shall have no responsibility for, interest in, or liability regarding the investment, allocation or distribution of the Net Distributable Settlement Fund, the determination, administration, calculation, or payment of claims, tax liability, the payment or withholding of taxes, or any losses in connection with the Settlement Class Member Payment or the implementation of this Settlement.

4.10    **Bankruptcy.** If a Settlement Class Member has filed for bankruptcy, the Settlement Class Member shall be solely responsible for providing any required notice to the bankruptcy trustee or Bankruptcy Court of the Settlement and Settlement Class Member Payment.

4.11    **Deficiency Write-Off.** The original amount and enforceability of the alleged deficiency balances outstanding on each Settlement Class Member's account is disputed in good faith. As a result of this good-faith dispute, Credit Union shall write off

14

all deficiency balances on the loans associated with the allegedly defective pre-repossession and/or post-repossession notice(s) for the Settlement Class Members. The write-off of deficiencies shall operate to reduce the alleged obligations of the Settlement Class Members to zero. Because the alleged deficiency balances being reduced to zero are contested liabilities and/or disputed debts, Credit Union is not required to, and will not, issue an IRS Form 1099 to Class Members because of the write-off. Settlement Class Members shall not be entitled to the return of any amounts previously paid towards the balance of their loans. Additionally, to the extent that a Class Member may have other loans, Finance Agreements, or lines of credit on the same open-ended credit agreement, those other loans, Finance Agreements or lines of credit are not subject to this Agreement and are excluded from any waiver. The Settlement Class shall be specifically informed by way of the notice to the class ("Class Notice") of the potential tax consequences of the proposed settlement and will be encouraged to consult with tax professionals about the tax consequences of the write-off.

Promptly upon the Effective Date of the Agreement, Credit Union will, regarding all Settlement Class Members, write off any remaining deficiency balances then owed or claimed remaining as of the Effective Date on the Settlement Class Members' collateralized loans that are the subject of the Litigation. Upon granting of the Preliminary Approval Order, Credit Union will cease all collections and attempts to collect money regarding the accounts subject to this Litigation and shall not accept payments on Settlement Class Members' deficiency balances. Except that, if a Settlement Class Member submits a valid "Refusal of Deficiency Balance Waiver" in accordance with Paragraph 9.4 below, their deficiency will not be waived and this Agreement will not affect Credit

15

Union's ability to collect on said deficiencies. If final approval is not granted, all collections on the closed accounts and written-off balances after the date of the Preliminary Approval Order shall be retained by Credit Union. The Credit Union estimates the Deficiency Write-Off and all account balances and deficiency claims written off under the terms of this Agreement is approximately $9,894,722.45 and shall be included as part of the Total Class Benefit.

4.12    **Credit Reporting by Credit Union.** After the Effective Date, Credit Union will cease reporting to the national credit reporting agencies (Experian, Equifax, TransUnion, and Innovis) (the "Credit Bureaus") there is any amount due or owing from the Settlement Class Members on the loans that are the subject of this Settlement. As soon as practicable, Credit Union will submit to the Credit Bureaus, through an electronic file with the Credit Bureaus, a code "DA – Delete Entire Account for Reasons Other Than Fraud" for each Settlement Class Member as it relates to each loan that is the subject of this Settlement.

The Parties acknowledge the Credit Bureaus are separate and distinct entities from Credit Union. The Parties acknowledge that Credit Union can request, but cannot guarantee, warrant, or take responsibility for the Credit Bureaus regarding changing, deleting, suppressing, or making entries regarding any credit information or other information regarding the Settlement Class Members' accounts concerning their loans or financing from Credit Union for any loan by Credit Union. Provided Credit Union has undertaken its obligations in this Paragraph 4, Releasors release and waive all claims, whether arising in contract or tort, common law or statute, and/or federal or state law (including, but not limited to, claims for any damages, attorneys' fees and/or costs) against

16

Released Persons that may arise subsequent to the Agreement or which arise out of or relate to actions required to be taken by Credit Union under this provision. If an item fails to get deleted or the reporting reoccurs on any account involved in this Litigation after Credit Union's initial request, the only remedy of Releasors as to Credit Union or any other Released Persons for the failure of any consumer or credit reporting agencies to amend the consumer or credit report is to request in writing that Credit Union again request that its tradeline be deleted as to the relevant Finance Agreement. It shall be solely the obligation of the individual Class Members to review their respective credit reports with the consumer or credit reporting agencies to ensure that the consumer or credit reporting agencies have complied with Credit Union's request to delete the tradeline.

4.13 **Settlement Administration**. Any costs, fees, and expenses of administration of the Agreement shall be paid from the Cash Fund as the Court may direct and approve. The Parties agree that the Settlement Administrator, upon request from either Party, shall provide reporting regarding class size, opt-outs, checks cashed, value of checks determined for each class member, and other reasonable information as the Parties may from time-to-time request of the Settlement Administrator. The Parties agree that any Settlement Administrator selected must be agreeable to using and then must use: (1) a bank that has twenty or more branches in Indiana and agrees to cash Settlement Class Member Payments without charging a check cashing fee (if more than one bank from the Settlement Administrator's network of bank meets these two requirements, the Settlement Administrator must use the bank that offers the highest interest rate negotiable from the Settlement Administrator's network of banks); or (2) any other bank as agreed upon by the Parties in consultation with the Settlement Administrator.

17

4.14    **Assignment and Award**. Credit Union agrees to enter into assignment agreement pursuant to which Credit Union shall assign its claims and rights, including without limitation, any claims of bad faith failure to settle, breach of the duty to defend, breach of the duty to indemnify, and failure to procure adequate insurance, against certain insurers ("Insurers") under certain insurance policies ("Policies"), defined as those on Exhibit C hereto and any other insurance policies in effect between February 2012 and the date this Agreement is signed by all Parties. Credit Union agrees to make all necessary disclosures and send notice to its Insurers listed on Exhibit C as reasonably requested by Class Counsel that the assignment has been made. Credit Union makes no representations or warranties whether there is insurance coverage by the Insurers for the Litigation and the Released Claims.

In arbitration, Dilley will seek damages for the Settlement Class to compensate for the claims in the Litigation and the Released Claims, including damages for wrongful repossession, libel/slander/defamation, invasion of privacy, property damages, customer injury, and other uncertain or hard to quantify damages, plus prejudgment interest and post-judgment interest. Notwithstanding anything to the contrary, Credit Union agrees not to contest or oppose an award (and confirmation of an award) by the Arbitrator regarding liability and damages for the Litigation and the Released Claims.

Other than the $1,650,000 to be paid by Credit Union in accordance with Paragraph 4, the Final Judgment and the Final Approval Order, shall indicate that nothing more shall be paid by Credit Union or may be satisfied from Credit Union's assets for its obligations required under this Agreement, and any remaining amount from the arbitration award may only be satisfied from Credit Union's Insurers. The judgment or arbitration award may not

18

be executed on or satisfied or attach to Credit Union or otherwise by acquiring assets of Credit Union. Credit Union will cooperate with Dilley's reasonable requests for assistance in obtaining a confirmed arbitration award regarding liability and damages and pursuing the assigned claims and rights, including providing documents necessary to support the award and assigned claims and rights, provided that all costs and expenses incurred in relation to said requests are paid by Class Counsel. Regarding any award on liability and damages, Credit Union agrees to arbitrate these issues consistent with this Agreement and waives its rights to: (i) a jury trial; (ii) present evidence; (iii) object to evidence; (iv) question witnesses called by Dilley; and (v) appeal any decision or judgment of the Arbitrator or confirmation of the same by the Court. If Dilley and Class Counsel seek to confirm the arbitration award in the Court, Credit Union has the right to review and approve the language of the Court filing seeking to confirm the award before it is filed. Credit Union approval shall not be unreasonably withheld.

Two of the Insurers listed in Exhibit C have filed federal court declaratory judgment actions as of the date of this Agreement naming Credit Union as a party-defendant, generally seeking to have the Court rule that they have no coverage for the claims in the Litigation. See Cause No. 3:24-cv-177 and 3:24-cv-597 (the "DJ Lawsuits"). The Parties agree that Credit Union will not appear and/or defend in those DJ Lawsuits and that Dilley shall promptly intervene to the extent not named in the DJ Lawsuits and in all pending or subsequently filed declaratory judgment lawsuits, and shall thus direct the defense of such actions as Dilley and his counsel see appropriate. To the extent counsel for Credit Union have appeared for the Credit Union in any filed federal or state court action including in the DJ Lawsuits, they shall withdraw if Dilley is a party or after Dilley becomes a party.

The intent of this provision is for the Credit Union to have no further interest in such matters and to reduce or eliminate attorneys' fees for the Credit Union.

Dilley shall not assign or transfer the assignment of these insurance claims to any other Person or entity other than the Settlement Class.

Notwithstanding anything to the contrary, Credit Union will not oppose Class Counsel seeking its reasonable costs, including administration costs and costs in pursuing/defending claims against the Insurers from any recovery obtained. Credit Union will not oppose any amount sought as attorney's fees from any recovery obtained from Insurers. The Settlement Class Members shall receive the funds from any recovery from the Insurers after attorney's fees and costs are deducted.

4.15    **Defense and Request for Release**. In the event Class Representative settles with any of the Insurers listed in Exhibit C and obtains a mutual release, Class Representative and Class Counsel shall have Credit Union named as a released party in any settlement agreement with the Insurers. In the event any of the Insurers listed in Exhibit C file suit or bring any litigation against Credit Union for entering into this Agreement, Class Counsel agrees to fully defend Credit Union at no cost or fee for the defense of the suit or litigation, subject to general oversight by Credit Union's counsel selected by Credit Union at Credit Union's cost.

5.  **Incentive Award, Attorneys' Fees and Costs; No Publicity**

5.1    **Incentive Award**. Class Counsel and/or Class Representative may petition the Court for the payment of an incentive award in a total amount not to exceed $15,000 in recognition of services rendered by Class Representative for the benefit of the Settlement Class throughout the Litigation. Any such incentive award shall be in addition to the

20

amount to be paid on his individual claims. Any incentive award approved by the Court shall be paid from the Cash Fund and not in addition to it. Any incentive award approved by the Court shall be deducted from the Cash Fund and distributed to the Class Representative with his Settlement Class Member Payment. Credit Union will not object to Class Representative applying to the Court for and/or receiving an incentive award in the above-stated amount. The Class Representative shall provide a form W-9 to Credit Union and the Settlement Administrator prior to having the Settlement Administrator issue the award.

5.2    **Cost Award**. Class Counsel and/or Class Representative may petition the Court for an award of Arbitration and Litigation costs and expenses. Any such Arbitration and Litigation costs and expenses will be paid from the Cash Fund and distributed to Class Counsel the first business day after entry of the Final Approval Order. Credit Union will not object to Class Counsel or Class Representative applying to the Court for and receiving an award of Litigation costs and expenses from the Cash Fund not to exceed $40,000 and for all costs and expenses of Arbitration.

5.3    **Fee Award**. Class Counsel and/or Class Representative may also petition the Court for an award of attorney's fees based on a percentage of the Total Class Benefit. Any such fee award approved by the Court will be paid from the Cash Fund and distributed to Class Counsel within 35 business days after entry of the Final Approval Order. Credit Union will not object to Class Counsel or the Class Representative applying to the Court for, and receiving an award of, attorneys' fees not to exceed 33% of the Total Class Benefit.

5.4    **No Allocation Liability**. Credit Union shall have no liability or other responsibility for the allocation of the Attorney's Fees and expenses among and between

21

Class Counsel and any other counsel for Class Representative or Class Members, or with respect to the incentive award to the Class Representative. In the event that any dispute arises relating to the allocation of the Attorney's Fees and Expenses or the Incentive Award, Class Counsel and Releasors agree that they release and are barred from suing or asserting any claim against Credit Union and the Released Parties related to or arising out of in any way the Attorney's Fees and Expenses or the Incentive Award.

    5.5    **Satisfaction for Payment of Fees and Expenses**. Credit Union's payment into the Cash Fund as described in Paragraph 4 of this Agreement shall constitute full satisfaction of Credit Union's or the Released Parties' alleged obligation to pay any Person, attorney, or law firm, for attorney's fees, costs and expenses incurred on behalf of the Class Representative and the Class Members, and shall relieve and release Credit Union and the Released Parties from any other claims or liability to pay any other attorney or law firm or Person for any attorney's fees, expenses and costs to which any Person may claim to be entitled related to the Released Claims.

    5.6    **No Publicity**. Class Counsel agrees, as part of the consideration for this Settlement, it will not in any way publicize this Settlement other than providing the Class Notices as specifically set forth herein or by Court order. As such, Class Counsel shall not publicize the Settlement, nor will they issue any press releases or speak to the press about the Litigation and/or Settlement other than to direct them to the Class Notice provided for herein.

    5.7    **Mediation**. Dilley and Credit Union agree they have paid or that they will pay all the costs of the Mediation held July 4, 2024, as invoiced to Dilley and Credit Union by mediator Trimble. NY Marine and General Insurance Company ("NY Marine") and

22

StarNet Insurance Company ("StarNet") also attended the Mediation but have refused or failed to pay mediator Trimble for their portion of the Mediation fees. Dilley and Credit Union agree to split and pay to mediator Trimble the cost of Mediator Trimble's invoice to StarNet.

## 6. Releases

6.1 **Final Release**. Releasors, by operation of the Final Approval Order and Final Judgment, shall be deemed without further action by any Person, (i) to have fully, finally and forever released, settled, compromised, relinquished, and discharged all of the Released Persons of all Released Claims; (ii) and to be forever barred and enjoined from instituting or further prosecuting in any forum including, but not limited to, any state, federal, or foreign court, or regulatory agency, the Released Claims. The Parties agree that the Released Persons will suffer irreparable harm if any Releasor takes action inconsistent with this release, and that the Released Persons may seek an injunction on such action without further showing of irreparable harm.

6.2 **Known and Unknown Claims**. The Releasors acknowledge and agree that they know they may discover material or immaterial facts besides or different from those which they now know or believe to be true regarding the subject matter of the Released Claims, but they intend to and do, upon the Effective Date of the Agreement, fully, finally and forever settle and release each and every of the Released Persons from every Released Claim, known or unknown, suspected or unsuspected, accrued or not accrued, contingent or matured, which now exists, may exist, or may heretofore have existed, without regard to the subsequent discovery or existence of such different or additional facts.

23

6.3    **Binding**. Subject to Court approval, each Releasor shall be bound by the Agreement and all of their claims shall be dismissed with prejudice and released even if they never received actual, prior notice of the Litigation or the Settlement in the Class Mail Notice or otherwise. The Release and agreements in this paragraph shall apply to and bind all Releasors, including those Settlement Class Members whose Class Mail Notices are returned as undeliverable, and those for whom no current address can be found.

6.4    **Generality of the Release**. Nothing in this section is intended to limit the generality of the release and covenant not to sue set forth above. It is the purpose and intent of this Agreement that all claims, actions and causes of action by Releasors as set forth in the Counterclaim, and/or any claims under the financing agreement(s) which are the subject matter of the instant proceeding, shall forever be barred. The doctrines of *res judicata* and collateral estoppel shall apply to all Releasors with respect to all issues of law and fact and matters of relief within the scope of all filed complaints in this Litigation, the Released Claims, and this Agreement. If a Releasor seeks, in a separate action or proceeding, relief that would be inconsistent with the terms of this Agreement, Credit Union or any Released Party may by affidavit or otherwise in writing, advise the other Parties and the court or other forum in which such action or proceeding is brought, that such relief in that action or proceeding is unwarranted. If requested by Credit Union or any Released Party, the Class Representative or Class Counsel shall also advise the forum in which such action or proceeding is brought, in writing, that such relief in that action or proceeding is unwarranted. Provided that, since this Agreement provides for review by the Court, any of the Parties hereto may recommend that matters raised in such separate action or proceeding should be submitted to the Court for resolution under the terms of this

24

Agreement. Notwithstanding anything to the contrary, the generality of the release and covenant not to sue as set forth in this Agreement must not be construed in any manner that precludes recovery by Class Representative and the Settlement Class as contemplated by Paragraph 4.14.

**7. Representations and Stipulations**

7.1     **Credit Union's Representations**. Credit Union represents, warrants and declares that:

(i)     it has acted in good faith and has used its best efforts in identifying the members of the Settlement Class from the documents and records currently available to Credit Union;

(ii)    the total amount due and owing from the Settlement Class Members for "deficiencies" on the Effective Date is approximately $9,894,722.45; and

(iii)   the total number of Settlement Class Members who will have their tradelines requested to be deleted by Credit Union is approximately 915 Settlement Class Members.

7.2     **Class Counsel Representations**. Except for their clients in the Litigation, Class Counsel represents and warrants to Credit Union they have not been retained by any client to commence a new lawsuit or pursue any claims or right of relief against Credit Union regarding any of the Released Claims. In addition, Class Counsel agrees that they will not solicit the right to legally represent any member or members of the Settlement Class who opt(s) out of the Settlement Class and Settlement regarding the Released Claims unless the Agreement terminates or does not become effective. Class Counsel also warrants that they do not presently have any intention of seeking to represent any clients who have

or claim to have any claims against any of the Released Parties. To the fullest extent permitted by law, Class Counsel shall not actively advertise for or undertake to solicit any Person to sue Credit Union on any claim or theory.

## 8. Preliminary Approval Order

The Parties shall promptly move the Court for a Preliminary Approval Order that:

8.1 Preliminarily approves the proposed Settlement Class under Indiana Trial Rule 23(B)(3) for settlement purposes only;

8.2 Preliminarily approves the Agreement as fair, reasonable and adequate under Indiana Trial Rule 23(B)(3) subject to a final determination by the Court;

8.3 Approves the appointment of Dilley as representative of the Settlement Class;

8.4 Approves the appointment of Class Counsel as counsel for the Settlement Class;

8.5 Stays all proceedings in the Litigation and enjoins the prosecution by Class Members who do not timely and validly exclude themselves from this Settlement of any non-filed or pending individual or class claims asserting any claim(s) encompassed by the Released Claims;

8.6 Approves Arbitration consistent with Paragraphs 2 and 4.14.

8.7 Approves a form of mailed notice substantially like the Class Mail Notices attached hereto as **Exhibit A** to be sent to the members of the Settlement Class by first-class mail or email at the best updated address available to Credit Union or any better subsequent address determined by the Settlement Administrator;

8.8 Approves a Long-Form Notice (substantially like the form attached hereto

26

as **Exhibit B**) that contains more extensive information than the Class Mail Notice and that will be provided to members of the Settlement Class by request and on a website;

8.9    Directs the Administrator to mail the Class Mail Notice promptly after entry of the Preliminary Approval Order to the Settlement Class by first-class mail or email to the last known address of such persons and to provide the Long-Form Notice to members of the Settlement Class on a website or otherwise if Settlement Class Members request it;

8.10    Schedules a hearing for final approval of the Agreement;

8.11    Establishes a procedure for members of the Settlement Class to opt out and setting a date, approximately 30 days after the mailing of Class Notice or earlier as the Court directs, after which no member of the Settlement Class shall be allowed to opt out of the Settlement Class;

8.12    Establishing a procedure for the members of the Settlement Class to appear and/or object to the Settlement and setting a date, approximately 30 days after the mailing of the Class Mail Notices or earlier as the Court directs, after which no member of the Settlement Class shall be allowed to object; and

8.13    Containing such other provisions consistent with the terms and provisions of the Agreement as the Court may deem advisable.

## 9.   Opt-Outs and Objections by Members of the Settlement Class

9.1.    **Procedure for Opt-Out Requests**. The deadline for opt-out requests shall be set forth in the Preliminary Approval Order. Any request to opt out must be in writing and must include the name, address, telephone number, last four digits of the Social Security Number of the Settlement Class Member seeking to opt out, and a statement that the Settlement Class Member and all other borrowers named on the Settlement Class

27

Member's Retail Installment Contract and Security Agreement or governing loan agreement are seeking exclusion. Any opt-out request must be signed by each Person who was a party to the Retail Installment Contract and Security Agreement or governing loan agreement that is the subject of this Litigation, unless such Person is deceased. If a party to the Retail Installment Contract and Security Agreement or governing loan agreement is deceased, a copy of the death certificate for such Person shall be submitted with the opt-out request. Any opt-out request must include a reference to "*Notre Dame Federal Credit Union v. David Dilley*, Case No. 43D04-2109-CC-000568" and be mailed to the Settlement Administrator. Class Counsel will cause the Settlement Administrator to send all opt-out requests to Class Counsel and Credit Union's Counsel via email within two days after receiving said requests.

To be timely and effective, any opt-out request must be postmarked by the date established in the Preliminary Approval Order. No member of the Settlement Class may opt out by having a request to opt out submitted and signed by an actual or purported agent or attorney acting on behalf of the Class Member. No opt-out request may be made on behalf of a group of Settlement Class Members. Each member of the Settlement Class not submitting an opt-out request that substantially complies with this Paragraph shall be included in the Settlement Class and deemed a Settlement Class Member. The Settlement Administrator shall provide to the Court, by the date of the Final Approval Hearing, a list of all persons, by reference to a unique identifier and last four digits of their Social Security Number, who have timely and adequately filed a request to be excluded from the Settlement.

28

9.2.    **Opt-Out Limit.**  If five percent (5%) or more of the class opts out of the Settlement, then the Parties will have 21 days to determine whether to withdraw from the settlement.  If the option to rescind is exercised, then the Agreement is void, and the Parties shall return to the status quo as if the Parties had not entered into the Agreement as set forth in Paragraphs 3.3 and 4.3 herein, and nothing contained in the Agreement or the settlement negotiations shall be discoverable or admissible in the Litigation.

9.3.    **Procedure for Objections to Settlement**. Any member of the Settlement Class who wishes to object to the Settlement or to the incentive awards or the awards of expenses, costs and/or attorneys' fees must file a written notice of objection, including supporting papers as described further below (collectively referred to as the "Notice of Objection"), with the Court on or prior to the date established in the Preliminary Approval Order. To determine timeliness, a Notice of Objection shall be deemed to have been submitted when received and filed with the Court. Copies of the Notice of Objection must also be postmarked by the date established in the Preliminary Approval Order, which shall be no later than twenty (20) days before the Final Hearing Date.

The Notice of Objection must be in writing and shall specifically include:

(i)    The name, address, telephone number, facsimile number (if available), email address (if available) and last four digits of the Social Security Number of the Settlement Class Member filing the objection;

(ii)    A statement of each objection asserted;

(iii)    A detailed description of the facts underlying each objection;

(iv)    Any loan documents in the possession or control of the objector and

29

relied upon by the objector as a basis for the objection;

(v)     If the objector is represented by counsel, the name, address, telephone number, facsimile number (if available) and email address (if available) of the counsel, and a detailed description of the legal authorities supporting each objection;

(vi)    If the objector plans to utilize expert opinion and/or testimony as part of the objection(s), a written expert report from all proposed experts that outlines each of the expert's opinions and the factual and substantive bases thereof;

(vii)   If the objector plans to call a witness or present other evidence at the hearing, the objector must state the identity of the witness and identify any documentary evidence by attaching the documents to the objection, and the objector must provide any other evidence that the objector intends to present;

(viii)  A statement of whether the objector intends to appear at the hearing;

(ix)    A copy of any exhibits which the objector may offer during the hearing;

(x)     A reference to *"Notre Dame Federal Credit Union v. David Dilley.;* Case No. 43D04-2109-CC-000568;" and

(xi)    **A certification under 28 U.S.C. § 1746 or similar state law in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".**

30

Attendance at the final hearing by an objector is optional. Any Settlement Class Member who does not make his or her objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, adequacy, or reasonableness of the proposed settlement or any other provision of the Agreement. The agreed-upon procedures and requirements for filing objections should ensure the efficient administration of justice and the orderly presentation of any Settlement Class Members' objections to the Agreement, in accordance with such Settlement Class Members' due process rights. The Preliminary Approval Order and Long-Form Notice shall require all Settlement Class Members who have any objections to serve by mail or hand delivery such objection upon Class Counsel and Credit Union's Counsel at the addresses in the Long-Form Notice no later than the objection date set by the Court. If the objecting Settlement Class Member opts to serve the objection upon Class Counsel and Credit Union's Counsel by mail, the objection must be postmarked no later than the objection date set by the Court. The Preliminary Approval Order shall further provide that objectors who fail to properly or timely file their objections with the Court with the required information and documentation, or fail to serve them, shall not be heard during any hearings, nor shall their objections be considered by the Court.

Under no circumstances shall Credit Union, Class Counsel, the Class Representative, or the Released Parties be responsible for paying any monies or other consideration to objectors and/or counsel for objectors under the terms of this Agreement or otherwise.

9.4.    **Refusal of Waiver of Deficiency Balance.** Each Settlement Class Member shall have the option to refuse waiver of the Deficiency Balance that Credit Union claims

31

is due. In order to refuse the Deficiency Balance Waiver, the Class Member must complete and send to the Settlement Administrator, at the address listed in the Class Notice and on the Settlement Website for this Settlement, a "Refusal of Deficiency Balance Waiver" that is postmarked no later than thirty (30) days after the Notice Mailing Date. The Refusal of Deficiency Balance must: (a) identify the case name; (b) identify the name and address of the Person requesting refusal; (c) be personally signed by the Person requesting refusal; and (d) contain a statement that indicates a desire to be included in the Settlement Class, but to refuse the Deficiency Balance Waiver, such as "I hereby request that I be included in the proposed Settlement Class in the Action, however I do not want Credit Union to eliminate any Deficiency Balance on my Account." All borrowers, including co-borrowers, must timely execute the Refusal of Deficiency Balance pursuant to this Paragraph in order to refuse the Waiver of the Deficiency Balance associated with that particular Account. Within thirty (30) days of the Notice Mailing Date, the Settlement Administrator shall forward copies of all Refusal of Waiver of Deficiency Balance notices received to counsel as identified in Paragraph 9.3.

**10. Final Approval Order and Final Judgment**

10.1    **Final Approval Order.** Class Representative and Class Counsel agree that they will request the Court to enter, after the hearing on final approval of the Agreement, a Final Approval Order certifying the Settlement Class and finding that the Agreement is fair, reasonable, and adequate and in the best interest of the Settlement Class and ordering the Parties to carry out the Agreement.

10.2    **Final Judgment.** Class Representatives and Class Counsel agree they will request the Court to enter a Final Judgment incorporating the Final Approval Order,

32

confirming any arbitration award, and noting the Court's decision to reserve continuing jurisdiction over the enforcement of the Agreement and the administrator and distribution of the Settlement Funds.

      10.3   **Final Accounting**. The Settlement Administrator, with the assistance of Class Counsel, shall file a final accounting with the Court within 300 days after the Effective Date. This final accounting shall contain a summary of all the distributions of the Cash Fund. Upon receipt of the final accounting, the Court, if satisfied with such report, shall file a Notice of Acceptance of Final Accounting indicating the Court's approval. If the Court requires clarification or additional information, the Parties shall furnish such information within 10 business days after such request. Within 345 days after the Effective Date, the Settlement Administrator, at its own costs, shall destroy all records provided to it by Credit Union and provide Credit Union with a declaration confirming the destruction of such records.

## 11. Certifications by the Settlement Administrator

      **11.1**   By the Final Hearing Date, the Settlement Administrator shall file with the Court an affidavit verifying the Court-approved Class Mail Notices have been sent by first-class mail and the Long-Form Notice has been provided to members of the Settlement Class on a website or otherwise upon the request of Settlement Class Members.

      **11.2**   By the Final Hearing Date, the Settlement Administrator shall file with the Court an affidavit verifying it has complied with the procedures described in Paragraph 14 regarding all Class Mail Notices returned as undeliverable.

## 12. Effectiveness of Agreement

      The "Effective Date" of the Agreement shall be the date when each and all of the following conditions have occurred:

a.    A Final Approval Order has been entered by the Court.

b.    A Final Judgment has been entered by the Court.

c.    The Final Approval Order and the Final Judgment has become final for purposes of appeal because of (i) the expiration of the time for appeals therefrom with no appeal having been taken or, (ii) if review of the order, or any portion thereof, is sought by any Person, the matter has been fully and finally resolved by the appellate court(s) and the time for seeking any higher level of appellate review has expired.

If any material portion of the Agreement, the Final Approval Order, or the Final Judgment is vacated, modified, or otherwise altered on appeal, any Party may, within seven (7) business days after such appellate ruling, declare that the Agreement has failed to become effective and in such circumstances the Agreement shall cease to be of any force and effect as provided in this Paragraph.

**13. Failure of Condition**

If the Agreement fails to become effective, the orders, judgment, and dismissal to be entered under the Agreement shall be null and void or otherwise vacated, and the Parties will be returned to the status quo as if the Agreement had never been entered and the provisions of Paragraphs 3.3 and 4.3 shall apply. In addition, the Agreement and all negotiations, arbitration rulings, court orders and proceedings relating to the Agreement shall be without prejudice to the rights of all Parties, and evidence relating to the Agreement and all negotiations shall not be admissible or discoverable.

**14. Class Mail Notice Forms**

Prior to mailing the Class Mail Notices, the Settlement Administrator will update the addresses by the United States Postal Service's National Change of Address database or

34

another address database service (e.g., Accurint, Intelius). The Settlement Administrator will re-mail any returned notices to any new address disclosed. If any notice is returned a second time, the Settlement Administrator shall undertake reasonable efforts to locate a current address for the Settlement Class Members. The notices shall be mailed within the later of twenty (20) business days after the Preliminary Approval Order or ten (10) business days after Credit Union provides Settlement Administrator with the Class List. Also, within twenty (20) business days after the Preliminary Approval Order, the Settlement Administrator will provide the Court-approved Long-Form Notice on a website that the Settlement Class can access. If requested by any member of the Settlement Class, the Settlement Administrator shall also mail a copy of the Long-Form Notice to the requesting member by first-class mail.

**15. Qualified Settlement Fund**

**15.1    Treasury Regulations.** The Cash Fund shall constitute a "qualified settlement fund" ("QSF") within the meaning of Treasury Regulation Section 1.468B-1 promulgated under Section 468B of the Internal Revenue Code of 1986 as amended. The Settlement Administrator shall be the "administrator" within the meaning of Treasury Regulation §1.468B-2(k)(3).

**15.2**    Upon establishment of the QSF, the Settlement Administrator shall apply for an employer identification number for the QSF utilizing Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation §1.468B-2(k)(4).

**15.3**    If requested by either Credit Union or the Settlement Administrator, the Settlement Administrator and Credit Union shall fully cooperate in filing a relation-back election under Treasury Regulation §1.468B-1(j)(2) to treat the QSF as coming into

35

existence as a settlement fund as of the earliest possible date.

15.4    Class Counsel shall cause the Settlement Administrator to file, on behalf of the QSF, all required federal, state, and local tax returns, information returns and tax withholdings statements under Treasury Regulation §1.468B-2(k)(1) and Treasury Regulation §1.468B-2(1)(2)(ii).

## 16. General Provisions

16.1    **Best Efforts to Effectuate Settlement**. The Parties' counsel shall use their best efforts to cause the Court to issue a Preliminary Approval Order in connection with this Agreement as promptly as practicable, to take all steps contemplated by this Agreement to effectuate the settlement on the stated terms and conditions and to obtain Final Approval of this Agreement.

16.2    **Entire Agreement.** This Agreement constitutes the full, complete and entire understanding, agreement and arrangement of and between the Class Representative and the Settlement Class Members and Credit Union regarding the Settlement and the Released Claims against the Released Persons. The Agreement supersedes all prior oral or written understandings, agreements, and arrangements between the Parties regarding the Settlement and the Released Claims against the Released Persons, including but without limitation that certain Memorandum of Settlement signed July 8, 2024, at the Mediation of this matter. Except for those set forth expressly in the Agreement, there are no agreements, covenants, promises, representations or arrangements between the Parties regarding the Settlement and/or the Released Claims against the Released Persons.

16.3    **Modification in Writing**. This Agreement may be altered, amended, modified or waived, in whole or in part, only in a writing signed by all Parties, and

36

approved by the Court, if necessary. The Agreement may not be amended, altered, modified or waived, in whole or in part, orally.

16.4    **Ongoing Cooperation.** The Parties hereto shall execute all documents and perform all acts reasonably necessary and proper to effectuate the Agreement. The execution of documents must take place prior to the Final Hearing Date.

16.5    **Duplicate Originals/Execution in Counterparts**. All Parties, Class Counsel and Credit Union's Counsel shall sign two copies of the Agreement, and each such copy shall be an original. The Agreement may be signed in one or more counterparts. All executed copies of the Agreement and photocopies thereof (including facsimile copies of the signature pages) shall have the same force and effect and shall be as legally binding and enforceable as the original.

16.6    **No Reliance**. Each Party to the Agreement warrants he, she or it is acting upon his, her, or its independent judgment and upon the advice of his, her, or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party, other than the warranties and representations made in the Agreement.

16.7    **Governing Law**. The Agreement shall be interpreted, construed, enforced, and administered under the laws of Indiana, without regard to conflict of laws rules. The Agreement shall be enforced by the Court. Class Representative and the Settlement Class Members waive any objection that each such party has to the venue of such suit, action, or proceeding and irrevocably consent to the jurisdiction of the Court in any such suit, action or proceeding, and agree to accept and acknowledge service of all process which may be served in any such suit, action or proceeding.

16.8    **Reservation of Jurisdiction**. The Parties agree that the Court should retain jurisdiction to enforce the terms of the Agreement.

16.9    **Binding on Successors**. Upon execution, the Agreement shall bind and shall inure to the benefit of the Parties and their respective successors, assigns, executors, administrators, heirs and legal representatives.

16.10    **Mutual Preparation**. The Agreement shall not be construed more strictly against one party than another merely because it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's length negotiations between the Parties, all Parties have contributed to the preparation of the Agreement.

16.11    **Gender Neutrality**. All personal pronouns used in the Agreement, whether used in the masculine, feminine or neutral gender, shall include all other genders, and the singular shall include the plural and vice versa.

16.12    **Taxes**. The Settlement Administrator shall issue a Form 1099 tax report to all Settlement Class Members who received payment through a Settlement check of $600 or more. In order to accomplish issuance of a 1099, Credit Union shall provide solely to the Settlement Administrator the social security number and last known mailing address of each Settlement Class Member based on the information currently existing in the business records of Credit Union. The Parties believe this Settlement does not create a taxable event under IRS regulations governing the discharge of indebtedness under the "contested liability" or "disputed debt" doctrine.

16.13    **Authority**. Each of the Parties to the Agreement represents, covenants and warrants that (a) they have the full power and authority to enter into and consummate all transactions contemplated by the Agreement and have duly authorized the execution,

38

delivery and performance of the Agreement and (b) the Person executing the Agreement has the full right, power and authority to enter into the Agreement on behalf of the party for whom he/she has executed the Agreement, and the full right, power and authority to execute all necessary instruments, and to fully bind such party to the terms and obligations of the Agreement.

16.14 **Exhibits**. The exhibits attached to the Agreement are incorporated as though fully set forth in the Agreement.

16.15 **Own Fees and Costs**. Except as otherwise provided in this Agreement, each Party shall bear his or its own attorneys' fees, costs, and expenses in the prosecution, defense, or settlement of the Litigation.

16.16 **Miscellaneous**. The terms and amount of the Cash Fund shall not be disclosed or advertised by any Party or their attorneys to the general public, and any disclosure shall be limited to the Arbitrator or Court only as necessary to obtain approval or as otherwise required by the Arbitrator or Court and to the Class Members only in the Class Notice as approved by all Parties and the Court. Neither this Agreement nor this paragraph nor any court order entered pursuant to this Settlement, including but not limited to the Preliminary Approval Order and the Final Approval Order, may be cited as authority or precedent involving either Party and shall not stand as support of a motion for class certification in any other case against Credit Union where certification is contested.

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused the Agreement to be executed as of the *10th* day of November 2024.

David Dilley

Dated: November_____, 2024

_David Dilley_____
David Dilley, for himself and the
Settlement Class Members

Notre Dame Federal Credit Union

Dated: November_____, 2024

By:_____

Name:_____

Title:_____

Class Counsel – Approved and Agreed
for Sections 7.2 and 4.15

Dated: November_____, 2024

By: _____

Credit Union's Counsel - Approved

Dated: November_____, 2024

By:_____

40

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused the Agreement to be executed as of the 27th day of November 2024.

David Dilley

Dated: November___, 2024

_____
David Dilley, for himself and the
Settlement Class Members

Notre Dame Federal Credit Union

Dated: November 27, 2024

By: _____

Name:__Thomas J Gryp_____

Title:__President/CEO_____

Class Counsel – Approved and Agreed
for Sections 7.2 and 4.15

Dated: November_____, 2024

By: _____

Credit Union's Counsel - Approved

Dated: November 27, 2024

By: _____
RICHARD A. NUSSBAUM, II

40

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused the Agreement to be executed as of the *27th* day of November 2024.

David Dilley

Dated: November_____, 2024

_____
David Dilley, for himself and the
Settlement Class Members

Notre Dame Federal Credit Union

Dated: November_____, 2024

By:_____

Name:_____

Title:_____

Class Counsel – Approved and Agreed
for Sections 7.2 and 4.15

Dated: November__27__, 2024

By:_____

Credit Union's Counsel - Approved

Dated: November_____, 2024

By:_____

40

# Dilley Settlement Agreement (Final)

Final Audit Report                                                    2024-12-10

| | |
|---|---|
| Created: | 2024-12-10 |
| By: | Tracy Malloy (tmalloy@onderlaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAADT9HVWL0ePCSzYC8ruD19dGY79UoDbto |

## "Dilley Settlement Agreement (Final)" History

📑 Document created by Tracy Malloy (tmalloy@onderlaw.com)
   2024-12-10 - 9:01:17 PM GMT- IP address: 99.83.18.97

📧 Document emailed to david.shawn.dilley@gmail.com for signature
   2024-12-10 - 9:01:47 PM GMT

📑 Email viewed by david.shawn.dilley@gmail.com
   2024-12-10 - 9:02:09 PM GMT- IP address: 64.233.172.108

✍️ Signer david.shawn.dilley@gmail.com entered name at signing as David Shawn Dilley
   2024-12-10 - 9:03:18 PM GMT- IP address: 172.56.252.191

✍️ Document e-signed by David Shawn Dilley (david.shawn.dilley@gmail.com)
   Signature Date: 2024-12-10 - 9:03:20 PM GMT - Time Source: server- IP address: 172.56.252.191

🏵️ Agreement completed.
   2024-12-10 - 9:03:20 PM GMT

Adobe Acrobat Sign

## EXHIBITS

Exhibit A – Class Mail Notices

Exhibit B – Long Form Mail Notices

Exhibit C – Insurance Policies

**Signature:** David Shawn Dilley (Dec 10, 2024 16:03 EST)

**Email:** david.shawn.dilley@gmail.com

i

KOSCIUSKO COUNTY SUPERIOR COURT, INDIANA

Filed: 12/11/2024 2:51 PM
Kosciusko Superior Court 4
Kosciusko County, Indiana

# If you owned property repossessed by Notre Dame Federal Credit Union, you could get valuable benefits from a class-action settlement.

*A court approved this notice. This is not an advertisement from a lawyer.*

- You may be eligible to participate in a settlement with benefits, including money, the write-off of certain debts, and the deletion of certain negative credit information from credit reports for certain persons who had a consumer loan or financing agreement with Notre Dame Federal Credit Union ("Credit Union") and had their vehicle repossessed and sold by Credit Union.

- The settlement resolves a lawsuit over whether Credit Union sent a Uniform Commercial Code compliant notice to you that purported to explain how you could get the vehicle back and stop Credit Union from selling it. The notice at issue must have been dated on or between February 11, 2012, to September 5, 2023, to be a part of the Class and eligible to receive the benefits explained below. This settlement avoids costs and risks to you from the lawsuit; provides benefits to borrowers like you; and releases Credit Union from liability.

- The two sides disagree on whether the borrowers could've won and on how much money they would've been entitled to had they won.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

- Consult your tax adviser about the tax issues associated with this settlement. Relief provided under this settlement, including money and debt reduction, may be subject to tax.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | If you do nothing, you will get money or other benefits from the settlement. But you won't be able to sue Credit Union for claims like the ones in this lawsuit. |
| **EXCLUDE YOURSELF** | If you want to sue Credit Union on your own, you can choose to leave the settlement. You won't get any money or benefits if you do this. |
| **OBJECT** | You can tell the court if you don't like the settlement. |
| **GO TO A HEARING** | You can go to court and talk about whether the settlement is fair. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court must still decide whether to approve the settlement. Money and benefits will be provided if the Court approves the settlement and after any appeals are resolved. Please be patient.

QUESTIONS? CALL 1- 800-XXX-XXXX TOLL FREE OR EMAIL WWW.SETTLEMENTWEBSITE.COM

*Exhibit B*

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ........................................................................**PAGE 3**
1. Why did I get this notice package?
2. What is this lawsuit about?
3. Why is this a class action?
4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ........................................................**PAGE 4**
5. How do I know if I am part of the settlement?
6. Are there exceptions to being included?
7. I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET** ...........................**PAGE 5**
8. What does the settlement provide?
9. What can I get from the settlement?

**HOW YOU GET SETTLEMENT BENEFITS** ......................................**PAGE 5**
10. How can I get my settlement benefits?
11. When would I get my settlement benefits?
12. What am I giving up to get settlement benefits or stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** .........................**PAGE 6**
13. How do I get out of the settlement?
14. If I don't exclude myself, can I sue Credit Union for the same thing later?
15. If I exclude myself, can I get benefits from this settlement?

**THE LAWYERS REPRESENTING YOU** ...........................................**PAGE 7**
16. Do I have a lawyer in this case?
17. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ..............................................**PAGE 7**
18. How do I tell the Court that I don't like the settlement?
19. What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** ............................................**PAGE 9**
20. When and where will the Court decide whether to approve the settlement?
21. Do I have to come to the hearing?
22. May I speak at the hearing?

**GETTING MORE INFORMATION** ..............................................**PAGE 10**
23. Are there more details about the settlement?
24. How do I get more information?

## BASIC INFORMATION

### 1. Why did I get a notice?

If you got a loan from Notre Dame Federal Credit Union to buy something, like a car, and the credit union took it back and sold it, you were likely sent a presale notice or post-sale notice.

You were sent a short form notice by regular mail on _____, 2024, because you should know about a proposed settlement of a class action lawsuit in which you may be a class member, and about all your options, before the Court decides whether to approve the settlement. If the Court approves it, and after objections and appeals are resolved (if any), Credit Union will write-off any remaining alleged debts and request removal of the negative "tradeline" from your consumer credit reports, meaning your default, repossession, and unpaid deficiency balance should no longer show up on your consumer credit reports. Class members will also receive payments, as described more fully in this notice.

This notice explains in greater detail the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge is Kosciusko County Superior Court, Indiana, and the case is *Notre Dame Federal Credit Union. v. David Dilley*, Case No. 43D04-2019-CC-000568.

### 2. What is this lawsuit about?

The lawsuit claimed, among other things, Credit Union did not provide proper notices as required by Indiana's Uniform Commercial Code. You can read the claims in more detail in Defendant David Dilley's Second Amended Counterclaim at www.settlementwebsite.com.

### 3. Why is this a class action?

In a class action, one person (David Dilley in this case) sues for a group of people who have the same problem. This group of people is called the "Class" or "Class Members." One court and one judge handle the case for everyone in the Class, unless someone chooses to leave the group. Judge Christopher D. Kehler is the judge in charge of this case.

### 4. Why is there a settlement?

The two sides don't agree on who would have won the case or what Dilley and the group of people he represents (the Class) would have gotten if they had won. Dilley thought he could have gotten back 10% of his loan amount and the finance charges stated on his loan. He also thought he could have had his remaining debt erased and bad marks removed from his credit report. Credit Union, however, thought the Class didn't deserve anything and Credit Union could still collect the debt or sue the Class to get it back.

Since neither side was sure what would happen in a trial, they decided to settle. This way, they avoid the cost of a trial, and the people in the Class get money and other benefits faster. Dilley, Credit Union, and the lawyers believe the settlement is fair for everyone.

QUESTIONS? CALL 1- 800-555-5555 TOLL FREE OR EMAIL WWW.SETTLEMENTWEBSITE.COM

## WHO IS IN THE SETTLEMENT

To see if you will get money and other benefits from this settlement, you first must decide if you are a Class Member.

### 5. How do I know if I am part of the settlement?

Judge Kehler decided everyone who fits this description is a Class Member:

> All persons to whom Credit Union mailed a presale notice or post-sale notice from February 11, 2012 to September 5, 2023.

### 6. Are there exceptions to being included?

If you got a loan from Credit Union, that alone doesn't make you a Class Member. You are a Class Member only if you fit the description above.

### 7. I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help. You can call 1-800-555-5555 or visit www.settlementwebsite.com for more information.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

### 8. What does the settlement provide?

Credit Union has agreed to provide the Class with settlement benefits, which include:

**MONEY**
Credit Union has agreed to create a $1,650,000 fund to pay: (a) Class Members; (b) the attorneys' fees and expenses for representing the Class; and (c) David Dilley for his services as Class Representative. This amount is called the "Cash Fund." Credit Union has also agreed to assign its claims and rights against certain companies that provided it insurance for the claims made in this lawsuit. Class Members will receive the money remaining from any recovery from the insurers after attorney's fees and costs are deducted.

**DEFICIENCY WRITE-OFF**
After the Effective Date (as defined in the Settlement Agreement) Credit Union will no longer seek to collect any money it claimed you still owed after it repossessed and sold your property. These outstanding amounts are called "Deficiency Balances," and Credit Union has agreed to request removal of the corresponding negative "tradeline" from your consumer credit reports. Credit Union estimates the value of this benefit to the Class and the Deficiency Balances during the class period being eliminated, at this time, is approximately $9,894,722.45. This amount is called the "Deficiency Write-Off."

QUESTIONS? CALL 1- 800-555-5555 TOLL FREE OR EMAIL WWW.SETTLEMENTWEBSITE.COM

CREDIT BUREAU REPORTING

After the Effective Date, Credit Union will request removal of deficiency balance information from your credit report with the nationwide consumer reporting companies—Equifax, Experian, and TransUnion—related to the Deficiency Balances and Debt Write-Offs. This might increase your credit score.

TAX ADVICE

Class Members are strongly encouraged to consult with a tax professional about the tax effects of any money and other benefits (including the Deficiency Write-Off) received from this settlement. The attorneys in this case cannot provide you with any tax advice, and your receipt of benefits under this settlement might have tax consequences.

## 9. What can I get from the settlement?

Every person in the Class will get benefits from the settlement. The amount of money each person will get depends on their share of the total settlement fund. This share is based on 10% of the amount each class member originally borrowed plus each class member's finance charge (or an average if the information wasn't available). All these amounts are added together for everyone in the Class to figure out how much each person will get.

# HOW YOU GET SETTLEMENT BENEFITS

## 10. How can I get my settlement benefits?

By doing nothing, unless you opt out of this settlement, you will receive the benefits that come from the settlement, including money.

## 11. When would I get my settlement benefits?

The Court will hold a final fairness hearing at _____ (Central Time), on _____, to decide whether to approve the settlement. Even if Judge Kehler approves the settlement, there may be appeals. It's always uncertain how an appeal will be resolved and how long it will take. Some appeals take more than a year. Please be patient. You'll receive your payment and other benefits if the settlement is approved and after that approval becomes a "final judgment" (i.e. after any appeals are resolved or the time for appealing has passed).

## 12. What am I giving up to get settlement benefits or stay in the Class?

Unless you exclude yourself by following the procedure below, you are a part of the Class, and that means you can't sue, continue to sue, or be part of any other lawsuit against Credit Union about the legal issues in this case. For example, you won't be able to make any independent claim against Credit Union arising from the written notices (presale and post-sale notices) this lawsuit is about. Staying in the Class also

means all the Court's orders in this lawsuit will apply to you and legally bind you. To see exactly the legal claims and defenses you give up if you get settlement benefits, please view the Settlement Agreement at www.settlementwebsite.com.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want benefits from this settlement, but you want to keep the right to sue or continue to sue Credit Union on your own about the legal issues in this case, then you must take steps to get out of the settlement. This is called "excluding" yourself—or is sometimes called "opting out" of the Class.

### 13.  How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter by mail saying you want to be excluded from *Notre Dame Federal Credit Union. v. David Dilley*, Case No. 43D04-2019-CC-000568. Include your name, address, telephone number, last four digits of your Social Security Number, and the name of any other person on your agreement with Credit Union, along with your signature. The exclusion request must be signed by you ***and by any co-borrower on your agreement***, unless the co-borrower is deceased, in which case you must include a death certificate with your request. You cannot exclude yourself by having an actual or purported agent or attorney acting for you or a group of class members sign the letter. You must mail your exclusion request postmarked no later than 30 days after the mailing of class notice, to:

American Legal Claims Services
PO Box 23650
Jacksonville, FL 32241

If you ask to be excluded, you'll get no settlement benefits, and you cannot object to the settlement. You won't be legally bound by anything that happens. You may sue (or continue to sue) Credit Union about the claims asserted.

### 14.  If I don't exclude myself, can I sue Credit Union for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Credit Union for the claims this settlement resolves. If you have a pending lawsuit, speak to your lawyer in that case immediately. You must exclude yourself from this settlement to continue your own lawsuit. Remember, the exclusion deadline is _____, 2025. Exclusion requests postmarked later than this date will not be honored.

### 15.  If I exclude myself, can I get benefits from this settlement?

No. But you may sue, continue to sue, or be part of a different lawsuit against Credit Union about the same types of claims that were made in this case.

## THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in this case?

The Court appointed Jeff Gibson and his law firm, Wagner Reese LLP, Martin Daesch of OnderLaw LLC, Jesse Rochman of OnderLaw LLC, and Craig Richards of OnderLaw LLC to represent you and other Class Members. These attorneys are called Class Counsel. They are experienced in handling similar class action cases against consumer lenders. More information about these lawyers and their firm is available at www.wagnerreese.com and www.onderlaw.com. You need not hire your own lawyer because Class Counsel is working for you. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 17. How will the lawyers be paid?

Class Counsel has prosecuted this litigation on a contingent basis and has incurred or advanced all costs, expenses, and attorneys' fees associated with the lawsuit. Class Counsel hasn't been paid for their work or received reimbursement for the expenses they have incurred or advanced for the class representative and class members. Class Counsel will ask the Court to approve payment of no greater than 35% of the quantifiable settlement benefits in attorneys' fees. Class Counsel will also ask to recover costs and expenses in an amount not to exceed $40,000. Class Counsel will also petition the Court to award David Dilley $20,000 for his services as Class Representative. Any fees and expenses awarded by the Court to Class Counsel is supposed to compensate and reimburse Class Counsel for investigating the facts, litigating the case, negotiating the settlement, and paying the costs to administer the settlement.

If Class Counsel litigates with Credit Union's insurers, Class Counsel will incur additional costs, expenses and attorneys' fees associated that litigation. Class Counsel will not be paid for their work or receive reimbursement for the expenses they incur or advance associated with litigating with Credit Union's insurers. Class Counsel will ask the Court for its reasonable costs, expenses, and attorney's fees from any recovery obtained from Credit Union's insurers.

## OBJECTING TO THE SETTLEMENT

You can tell the Court you don't agree with the settlement or some part.

### 18. How do I tell the Court I don't like the settlement?

If you're a Class Member, you can object to the settlement if you don't like it. You can explain why you think the Court shouldn't approve it. The Court will consider your views. To object, you must send a letter saying you object to *Notre Dame Federal Credit Union. v. David Dilley*, Case No. 43D04-2019-CC-000568. Your letter must include your name, address, telephone number, facsimile number (if available), email address (if available), last four digits of your Social Security Number, a statement of your objections, and the reasons and facts you contend support your objections. Your objection must include any documents (including loan documents) you rely upon to support your objection and identify any witnesses you plan to use at the Fairness Hearing (described below). If there is other evidence (e.g., documents) that you rely upon for your objection, you must attach copies to your objection. If you plan to use expert witnesses about your

objection, you must provide—with your objection—an expert report for each expert outlining the expert's opinions and the facts and reasons for the expert's opinions. You must also state whether you intend to appear at the Fairness Hearing and provide copies of any evidence you intend to use at the hearing. Finally, you must sign and date the objection and include a statement substantially in this form: "I declare (or certify, verify, or state) under penalty of perjury that all of the information in the objection is true and correct. Executed on (date). (Signature)."

Mail the objection to the Court, to Class Counsel, and to Credit Union's Counsel at the separate addresses below. Your objection must be postmarked no later than thirty (30) days after the mailing of class notice:

| COURT | CLASS COUNSEL | CREDIT UNION'S COUNSEL |
|---|---|---|
| Kosciusko County Clerk's Office<br>121 N Lake St<br>Warsaw, IN 46580 | Jeff Gibson<br>Wagner and Reese, LLP<br>11939 N. Meridian Street, Suite 100<br>Carmel, IN 46032<br><br>and<br><br>Martin L. Daesch<br>Craig W. Richards<br>Jesse B. Rochman<br>OnderLaw, LLC<br>110 E. Lockwood<br>St. Louis, MO 63119 | Kay Dee Baird<br>Brett J. Ashton<br>Scott S. Morrisson<br>Krieg Devault LLP<br>One Indiana Square, Suite 2800<br>Indianapolis, IN 46204 |

If an attorney is submitting the objection for you, besides information and materials discussed above, the objection must also include the name, address, telephone number, facsimile number (if available), and email address (if available) of your attorney and a detailed description of the legal authorities supporting each objection.

If you file an objection, Class Counsel or Credit Union's Counsel may notice and take your deposition, consistent with the Indiana Trial Rules, at an agreed-upon location before the Fairness Hearing and seek any documentary evidence or other tangible things relevant to the objection. Failure by an objector to comply with discovery requests may cause the Court to strike the objection and otherwise deny that person the opportunity to be heard further. The Court reserves the right to tax the costs of any such discovery to the objector or objector's counsel should the Court determine the objection is frivolous or is made for an improper purpose.

## 19.  What's the difference between objecting and excluding?

Objecting is telling the Court you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

## 20. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at _____ **(Central Time)**, on _____, at the Kosciusko Superior Court, located at 121 N Lake St, Warsaw IN 46580. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Kehler will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay to Class Counsel and the Class Representative. After the hearing, the Court will decide whether to approve the settlement. We don't know how long these decisions will take.

## 21. Do I have to come to the hearing?

No. Class Counsel will answer questions that Judge Kehler may have. But you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. If you mailed your written objection on time with all the required information, the Court will consider it. You may also pay your own lawyer to attend, but that is unnecessary.

## 22. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. You may speak either for or against the settlement. To speak for the settlement, you must send a letter saying it is your "Notice of Intention to Appear in *Notre Dame Federal Credit Union v. David Dilley*, Case No. 65C01-1906-CC-00234." Include your name, address, telephone number, last four digits of your Social Security Number, and your signature. Your "Notice of Intention to Appear" must be postmarked no later than 20 days prior to the Fairness Hearing, be sent to the Circuit Clerk's Office, Class Counsel, and Credit Union's Counsel, at the three addresses provided in question 18.

If you plan to speak at the Fairness Hearing to tell the Court you don't like something about the settlement, you must submit an objection as detailed in question 18 and include with that objection a statement you intend to appear at the Fairness Hearing. The identity of any witnesses or experts you plan to present at the Fairness Hearing, with evidence you intend to present at the Fairness hearing, must also be included with your objection.

You cannot speak at the hearing if you excluded yourself or if you don't send in a request with the required information and documents.

## GETTING MORE INFORMATION

| 23. | Are there more details about the settlement? |
| --- | --- |

This notice summarizes the proposed settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement by writing to Notre Dame Federal Credit Union Settlement, PO Box 23650, Jacksonville, FL 32241, or by visiting the password protected website, www.settlementwebsite.com.

| 24. | How do I get more information? |
| --- | --- |

You can call 1-800-555-5555 toll free, write to American Legal Claims Services, PO Box 23650, Jacksonville, FL 32241; or visit the website www.settlementwebsite.com, where you will find information to help you determine whether you are a Class Member.

DATE: _____, 2024

Filed: 12/11/2024 2:51 PM
Kosciusko Superior Court 4
Kosciusko County, Indiana

## Exhibit C – Insurance Policies

**Great Northern Insurance Company and Federal Insurance Company**

Policy Nos. 3594-21-07 (CGL) and 7988-10-58 (Excess/Umbrella)


**New York Marine and General Insurance Company**

Commercial Package Policy Nos. PK201700010378, PK202000010378, and PK202300010378

Management and Security Liability Policy No. PL202000003200


**StarNet Insurance Company and Berkley National Insurance Company**

Policy Nos. FPP 1000029-00, FPP 1000093-00, FPP 6017010-10, FPP 6017010-11, and FPP 6017010-12

| STATE OF INDIANA | ) | IN KOSCIUSKO SUPERIOR COURT |
| | ) SS: | |
| KOSCIUSKO COUNTY | ) | CAUSE NO. 43D04-2109-CC-000568 |

| Notre Dame Federal Credit Union | ) |
| | ) |
|     Plaintiff/Counterclaim-Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| David Dilley | ) |
| | ) |
| Defendant/Counterclaimant. | ) |

## Preliminary Approval Order of Class Settlement

WHEREAS, David Dilley ("Claimant") is asserting claims against Notre Dame Federal Credit Union (the "Credit Union") for alleged violations of Indiana's Uniform Commercial Code and seeks damages and other relief for himself and a class of persons similarly situated;

WHEREAS, Claimant and the Credit Union (collectively, the "Parties") stipulate to a Settlement Class for notice and settlement purposes only, pending preliminary and final approval by the Kosciusko County Superior Court, Indiana, comprising and defined as: "all persons to whom Credit Union mailed a presale notice or post-sale notice from February 11, 2012, to September 5, 2023" ("Settlement Class");

WHEREAS, Claimant, as a member and representative of the Settlement Class, and the Credit Union have entered into a "Class Action Settlement Agreement and Release" fully executed as of December 10, 2024 (the "Settlement Agreement"), which memorializes the Parties' negotiated and agreed-upon settlement as between them and a proposed Settlement Class, subject to the approval of the Court ("the Settlement");

WHEREAS, the Parties have filed *Unopposed Motion for Preliminary Approval of Class Action Settlement* with the Court.

NOW THEREFORE, upon careful consideration of the *Unopposed Motion for Preliminary*

Exhibit 2

*Approval of Class Action Settlement*, and after reviewing the Settlement Agreement and for good cause shown after and independent judicial investigation, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

    1.    Under Indiana T.R. 23, the Settlement Agreement and the Settlement are approved preliminarily as fair, reasonable and adequate to the Settlement Class because:

    a.   all Settlement Class Members will have their deficiency balances (according to Credit Union's records) reduced to zero, protecting them from collection efforts and deficiency suits being filed against them;

    b.   the Settlement will provide monetary benefits to the Settlement Class Members that they would unlikely realize, or even pursue, but for being a part of the Settlement Class; and

    c.   the Settlement Class Members will receive valuable credit score improvement by having the account associated with the loan in which they defaulted and had their vehicle repossessed removed from their credit reports as stated in the Settlement Agreement.

    2.    The definitions in the Settlement Agreement are incorporated by reference into this Order (with capitalized terms in the Settlement Agreement).

    3.    Claimant and the Credit Union have executed the Settlement Agreement to settle and resolve the Litigation between the Parties and the proposed Settlement Class, subject to approval of the Court.

    4.    Upon review of the *Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement*, this Court preliminarily certifies for notice and settlement, under Indiana T.R. 23(B)(3), the Settlement Class.

5.      The Court finds:

    a.    The Settlement Class is so numerous that joinder of all members is impracticable.

    b.    There are questions of law or fact common to the Settlement Class that predominate over questions affecting the members of the Settlement Class.

    c.    Claimant's claims are typical of those of the members of the Settlement Class.

    d.    Claimant and Class Counsel will fairly and adequately represent and protect the interests of the members of the proposed Settlement Class.

    e.    Certification of the Settlement Class as proposed is a superior and appropriate method for the fair and efficient adjudication of the controversies between the Settlement Class and the Credit Union.

    f.    The Credit Union must write off the claimed deficiency balances and cease all collection efforts regarding the loans that have deficiency balances and are the subject of the Litigation as stated in the Settlement Agreement.

6.      For this preliminary approval, and for all matters relating to the Settlement and the Litigation, the Court appoints Claimant as Representative of the Settlement Class. The Court appoints as Class Counsel for the Settlement Class Jeffrey Gibson of the law firm Wagner Reese, LLP, and Martin L. Daesch, Jesse B. Rochman, and Craig W. Richards of OnderLaw, LLC.

7.      The Court appoints American Legal Claims Services, Inc. as the Settlement Administrator.

8.      By this Order, the Court exercises subject-matter and personal jurisdiction over the Settlement Class to evaluate the final certification of the Settlement Class and the fairness and adequacy of the Settlement.

9.      The Class Mail Notice and Long-Form Notice, as set forth in **Exhibits A** and **B** to

the Settlement Agreement, are approved.

10.    The Settlement Administrator shall mail a Class Mail Notice, by regular class mail, postage prepaid, to each Settlement Class Member. The Class Mail Notice mailed shall be in a form substantially the same as Exhibit A. Such mailing shall be made within the timeframe provided by the Settlement Agreement. The Long-Form Notice shall be in a form substantially the same as **Exhibit B** to the Settlement Agreement. Further, the Long-Form Notice shall be provided to members of the Settlement Class on a website and mailed by regular mail, postage prepaid, to Settlement Class Members upon their request.

11.    The Settlement Agreement contemplates a notice methodology that protects the interests of the Parties and the Settlement Class and provides the best notice practicable under the circumstances. The notice methodology is also reasonably calculated to apprise the Settlement Class Members of the pendency of the Litigation and the proposed Settlement Agreement, as well as Settlement Class Members' right to opt out and exclude themselves from or object to the proposed Settlement.  In addition, the Court finds that the notice methodology is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice of the proposed Settlement and meets all requirements of law, including, but not limited to, Indiana T.R. 23 and the Due Process Clause of the Fourteenth Amendment of the United States Constitution and the Indiana Constitution.

12.    Prior to the Final Fairness Hearing, Class Counsel shall cause the Settlement Administrator to serve and file a sworn statement of a person with knowledge, evidencing compliance with this Order concerning the mailing of the Class Mail Notice.

13.    Any member of the Settlement Class desiring exclusion from the Settlement Class shall mail a request to opt out ("Request to Opt Out") to the Settlement Administrator.  To be valid,

the Request to Opt Out must be postmarked within 30 days after mailing of the Notice to class members. Such Request to Opt Out shall include: (a) the name, address, telephone number, and last four digits of the Social Security Number of the Settlement Class Member; (b) a statement that the Settlement Class Member and all other borrowers named on the Settlement Class Member's Retail Installment Contract and Security Agreement or governing loan agreement are seeking exclusion from or to opt out of the Settlement; (c) the signature of each person who was a party to the Retail Installment Contract and Security Agreement or governing loan agreement that is the subject of this Litigation (unless any such person shall be deceased, in which case the opt-out submission shall include a copy of such person's death certificate); and (d) a reference to *Notre Dame Federal Credit Union v. David Dilley*, Cause No. 43D04-2109-CC-000568.

14.     Any member of the Settlement Class who does not properly and timely request exclusion or to opt out from the Settlement Class shall be included in the Settlement Class and be bound by any judgment entered with respect to the Class.

15.     Within seven days before the Final Approval Fairness Hearing (defined below), Class Counsel shall cause the Settlement Administrator to file with the Court a sworn statement listing those persons (by reference to the unique identifier and last four digits of the person's Social Security Number—as provided by Credit Union to the Settlement Administrator in compliance with the Settlement Agreement) who submitted timely Requests to Opt Out. The originals of all Requests to Opt Out shall be retained by the Parties.

16.     A final approval hearing (the "Fairness Hearing") shall be held before the undersigned at __1:30 p__.m. on _____March 24_____, **2025**, at the Kosciusko County Superior Court  4, in person.                    At the Fairness Hearing, the Court will consider: (a) the fairness, reasonableness, and adequacy of the Settlement; (b) the entry of any final order or

judgment with respect to the Settlement Class; (c) the application for an incentive award for the services rendered by Claimant as Representative of the Settlement Class; (d) the application for attorney's fees and for reimbursement of expenses by Class Counsel; and (e) other related matters. The Fairness Hearing may be postponed, adjourned or continued by the Court without further notice to the Settlement Class.

17.    To be considered at the Fairness Hearing, any person desiring to file an objection or other comment on the Settlement shall be required to file all such objections and comments and all supporting pleadings within 30 days after mailing of the Class Mail Notice, with service upon Class Counsel and Credit Union's Counsel postmarked within 30 days after mailing of the Class Mail notice. Any Settlement Class Member's objection must be in writing and shall specifically include:

(i)    The name, address, telephone number, facsimile number (if available), email address (if available) and last four digits of the Social Security Number of the Settlement Class Member filing the objection;

(ii)    A statement of each objection asserted;

(iii)    A detailed description of the facts underlying each objection;

(iv)    Any loan documents in the possession or control of the objector and relied upon by the objector as a basis for the objection;

(v)    If the objector is represented by counsel, the name, address, telephone number, facsimile number (if available) and email address (if available) of the counsel, and a detailed description of the legal authorities supporting each objection;

(vi)    If the objector plans to utilize expert opinion and/or testimony as part of the objection(s), a written expert report from all proposed experts that outlines each of the expert's opinions and the factual and substantive bases thereof;

(vii)    If the objector plans to call a witness or present other evidence at the hearing, the objector must state the identity of the witness and identify any documentary evidence by attaching the documents to the objection, and the objector must provide any other evidence that the objector intends to present;

6

(viii)   A statement of whether the objector intends to appear at the hearing;

(ix)    A copy of any exhibits which the objector may offer during the hearing;

(x)     A reference to *Notre Dame Federal Credit Union v. David Dilley*, Cause No. 43D04-2109-CC-000568; and

(xi)    A certification under 28 U.S.C § 1746 or similar state law in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

No Objection to or other comment concerning the Settlement shall be heard unless timely filed under the guidelines specified above and in the Settlement Agreement. Class Counsel and the Credit Union's Counsel shall promptly furnish each other with copies of all objections or written requests to opt out that come into their possession.

18.    Any Settlement Class Member who does not make his or her objection in the manner provided in this Order shall be deemed to have waived any such objection and shall forever be foreclosed from making any objection to the Settlement, including but not limited to, the propriety of class certification, the adequacy of any notice, or the fairness, adequacy or reasonableness of the Settlement. The procedures and requirements for filing objections to the Settlement Agreement and Settlement should ensure the efficient administration of justice and the orderly presentation of any Settlement Class Members' objections to the Settlement Agreement, in accordance with such Settlement Class Members' due process rights. Objectors who fail to properly or timely file their objections with the Clerk of the Court with the required information and documentation set forth above, or fail to serve them as provided above, shall not be heard during any hearings, nor shall their objections be considered by the Court.

19.    Submissions of the Parties relative to the Settlement, including memoranda to support the Settlement, applications for attorney's fees and reimbursement of costs or expenses by

Class Counsel, and any applications for the payment of services rendered by Claimant, as Representative of the Settlement Class, shall be filed with the Clerk of the Court prior to the Final Fairness Hearing. Any attorney hired by a Settlement Class Member at the Settlement Class Member's expense to object to the Settlement, or to any application for an incentive award or for an award of attorney's fees, costs, or expenses, shall file with the Clerk of Court and serve upon Class Counsel and Credit Union's Counsel a written notice of appearance within 30 days after the mailing of class notice.

20.     Any Settlement Class Member may appear at the Fairness Hearing in person, or by counsel if an appearance is filed and served as provided in the Long Form Notice, and such person will be heard to the extent allowed by the Court. No person shall be permitted to be heard unless, at least seven days prior to the Final Fairness Hearing, such person has (a) filed with the Clerk of the Court a notice of such person's intention to appear and (b) served copies of such notice upon Class Counsel and the Credit Union's Counsel.

21.     All other events contemplated under the Settlement Agreement to occur after entry of this Order and before the Fairness Hearing shall be governed by the Settlement Agreement and the Class Mail Notice, to the extent not inconsistent with this Order. Class Counsel and the Credit Union's Counsel shall take such further actions as required by the Settlement Agreement.

22.     The Parties shall be authorized to make nonmaterial changes to the Class Mail Notice and Long-Form Notice if Class Counsel and the Credit Union's Counsel agree.

23.     All claims against and motions in the Litigation, other than such as may be necessary to carry out the terms and conditions of the Settlement Agreement or the responsibilities related or incidental thereto, are stayed and suspended until further order of this Court.

24.     The "Released Claims" of the "Releasors" as against the "Released Persons," all as

8

defined in the Settlement Agreement, other than such as may be necessary to carry out the terms and conditions of the Settlement Agreement or the responsibilities related or incidental thereto, are stayed and suspended until further order of this Court.

25.     If Final Approval of the Settlement does not occur, or if the Settlement is rescinded or terminated, the Settlement and all proceedings had in connection therewith shall be null and void and without prejudice to the rights of the Parties before the Settlement was executed and made, and all Orders issued for the Settlement shall be vacated.

26.     Entering into or carrying out the Settlement Agreement, and any negotiations or proceedings related to it, shall not be construed as, or deemed evidence of, an admission or concession regarding any claims or defenses alleged or asserted, or any factual or legal assertions in the Litigation, and shall not be offered or received in evidence in any action or proceeding against any party in any court, administrative agency or other tribunal for any purpose, except in a proceeding to enforce this Order and the Settlement Agreement, or to prove or show that a compromise in settlement of the Released Claims per the Settlement Agreement was reached; provided, however, this Order and the Settlement Agreement may be filed in any action filed against or by the Credit Union or any Released Person to support a defense of *res judicata*, collateral estoppel, release, waiver, good faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim. The Parties expressly reserve all rights and defenses to all claims and causes of action and waive no such rights or defenses if the Settlement Agreement is not approved or fails to become effective for any reason.

SO ORDERED this _December 18, 2024_

_____
Judge, Kosciusko County Superior Court

9

Distribution to:

All IEFS-registered Counsel of Record